[Civ. No. 6588.   Third Dist.—June 16, 1941.]

HATTIE SEARS et al., Appellants, v. CHARLES T. RULE, Individually and as an Involuntary Trustee, etc., Respondents.

Edwin J. Miller and Ralph W. Miller for Appellants.

Draeger & Loud and Geo. T. Warren for Respondents.

THOMPSON, J.—The plaintiffs have appealed from a judgment of dismissal of an action for equitable relief, after a demurrer to an amended complaint had been sustained without leave to amend the pleading. The application to file a second amended complaint was denied. The suit was instituted after a decree of distribution became final. The action seeks to declare a resulting trust in real property which the will failed to dispose of since the voluntary trust sought to be created by the testatrix failed because neither the subject, purpose nor beneficiaries were mentioned in the will. It is asserted the executor procured an absolute distribution to himself by means of extrinsic fraud.

The complaint alleges that Charles F. Weber died testate January 25, 1934, leaving his entire estate to his wife, Sarah E. Weber, except eight parcels of his separate real property which were previously given to the wife in joint tenancy; that the spouses had neither living children nor parents; that Sarah E. Weber died testate January 1, 1936, in Los Angeles, leaving an estate valued at $300,000; that she left

surviving her three brothers who were named in the petition for probate of the will, and also the plaintiffs in this case consisting of a half sister and five children of John E. Weber, a deceased brother of Charles F. Weber, deceased, none of the heirs of the deceased husband having been mentioned in the petition for probate of the will or in the petition for distribution; that the will of Sarah E. Weber bequeathed to her brother Charles T. Rule, absolutely, the household goods and personal effects of the testatrix, but attempted to devise to him the remainder of her estate in trust only, which trust failed under section 2221 of the Civil Code because the "subject, purpose and beneficiary of the trust" were not mentioned; that the eight parcels of the separate property of the deceased husband Charles F. Weber, which were previously given to his wife in joint tenancy, reverted to the plaintiffs in this case as his heirs and descendants by right of representation, pursuant to section 229 of the Probate Code; that the will of Sarah E. Weber was duly admitted to probate in Los Angeles County, and Charles T. Rule was appointed executor thereof; that distribution of the entire estate was wrongfully made to Charles T. Rule, as the absolute owner thereof, on March 15, 1937, without notice or knowledge thereof by any of the plaintiffs in this case; that these plaintiffs did not discover that distribution had been so made until April, 1938, and therefore failed to appeal from that decree; that the absolute distribution of the estate was procured by extrinsic fraud of Charles T. Rule, who failed to notify any of these plaintiffs of the probating or distribution of said estate, and by wilfully failing to disclose to the probate court his knowledge of the fact that the testatrix intended to will to him the residue of the estate in trust only, with an agreement on his part to distribute the property according to their previous understanding; that a secret trust was thereby created, and that since the precatory trust attempted to have been created by the terms of the will failed, a resulting trust in the residue of the estate was automatically created in favor of the heirs of the testatrix and of her deceased husband, by right of succession.

Paragraph four of the will of Sarah E. Weber gives to her brother, Charles T. Rule, absolutely, her household goods and personal effects. Paragraph five provides as follows:

"All the rest, residue and remainder of my estate, of whatever kind and character, and wheresoever situated at the time of my decease, I give, devise and bequeath as follows, to-wit:

"(a) To my brother, Charles T. Rule, of Los Angeles, California, the whole thereof; and in the event he should fail to survive distribution to him, then to my heirs in accordance with the laws of succession of the State of California.

"(b) The reason of making my brother, Charles T. Rule, aforesaid, the sole beneficiary of my estate, is that I am confident, and place my trust in him to the extent that he will distribute my estate in accordance with my wishes he and I have often discussed."

The sixth paragraph of the will then provides that "If any devisee, legatee or beneficiary hereunder contest this will" he shall be given the sum of $1 in lieu of any share of the estate he might otherwise inherit. The seventh paragraph of the will then appoints Charles T. Rule "guardian of the estate of any minor or incompetent person to whom distribution is made hereunder".

The appellants contend that it is apparent from the provisions of the will and the surrounding circumstances that the testatrix did not intend to devise her estate absolutely, other than the household goods and personal effects, to her brother Charles, and upon the contrary that she intended to convey the residue of the property to him in trust only for beneficiaries previously agreed upon between them, and that since that trust failed, and the property was wrongfully distributed to him, a resulting trust was therefore created for the benefit of the lawful heirs according to the rules of succession. It is further asserted that since distribution was procured by extrinsic fraud exercised by Charles T. Rule, the executor, the heirs are not bound thereby but may secure equitable relief in this suit.

We are required to determine whether the proposed amended complaint states facts sufficient to create a resulting trust in the residue of property not disposed of by will, for the benefit of the heirs according to the rules of succession, and whether facts are alleged showing extrinsic fraud so as to relieve the plaintiffs from the binding effect of the decree of distribution.

The respondents contend that the terms of the will, by means of which the entire estate was devised to Charles T. Rule as sole beneficiary thereof, are clear and explicit to that effect, and that the language which follows that devise is a mere recitation of the reasons for doing so, which does not affect the absolute passing of title, as provided by section 104 of the Probate Code.

After a careful examination of the provisions of the will, viewed in the light of the facts alleged in the complaint, we are of the opinion the probate court erred in determining that the residue of the estate, other than the household goods and personal effects, were devised absolutely to Charles T. Rule. On the contrary, we are persuaded the testatrix did not intend to make her brother sole beneficiary of her entire estate. It seems clear that she had a previous understanding with him that she would give him the property in trust to be distributed to individuals or for the benefit of charitable causes according to an agreement between them.

The language of the will does not create a valid trust. It failed to mention the "subject, purpose and beneficiary" as required by section 2221 of the Civil Code. Since the will also failed to dispose of the residue of the estate, we are of the opinion a resulting trust was thereby created for the benefit of the heirs according to the rules of succession.

It is true that the intention of a testator must be determined from the language employed in the will when it is clear and unambiguous, and under such circumstances a court may not speculate on what he may have intended to say or do. (*Gore* v. *Bingaman,* 29 Cal. App. (2d) 460, 469 [85 Pac. (2d) 172]; *Estate of Bourn,* 25 Cal. App. (2d) 590 [78 Pac. (2d) 193].) When the language of the will is uncertain or ambiguous, competent surrounding circumstances may be resorted to for the purpose of determining the testator's intention as it is expressed in the will. But if the language of the will, construed in the light of surrounding circumstances, clearly indicates that the testator did not intend to devise his property absolutely, then the will fails to dispose of such property and it must be considered as intestate property which should be distributed to the heirs according to the rules of succession, even though the will may have attempted to create a trust which is void.

It is conceded in the present case that the language of the will is insufficient to create a trust in the residue of the property by the use of precatory terms. We agree with that statement for the reason that it fails to mention the subject, purpose or beneficiaries thereof, as required by section 2221 of the Civil Code, and because the will does not purport to enforce an *imperative obligation* upon the brother of the testatrix to perform any specific acts. (*Wills* v. *Wills,* 166 Cal. 529 [137 Pac. 249]; *Estate of Mitchell,* 160 Cal. 618 [117 Pac. 774]; *Estate of Lee,* 104 Cal. App. 15 [284 Pac. 948]; *Estate of Browne,* 175 Cal. 361 [165 Pac. 960]; *Estate of Mooney,* 25 Cal. App. (2d) 481 [77 Pac. (2d) 1098]; 25 Cal. Jur. 288, sec. 146; 26 Cal. Jur. 973, sec. 271; 69 C. J. 713, secs. 1830–1832; 1 Restatement of Law of Trusts, 76, sec. 25; 1 Bogert on Trusts, 223, sec. 48.) In the authorities last cited it is said that where a testator has made an unrestricted devise of property by the terms of his will, subsequent precatory language will not be deemed to create a trust therein. In the *Estate of Browne, supra,* it is stated that a trust will not be created in the absence of language imposing upon the devisee an imperative obligation to perform specific acts. The early liberal construction of language upholding precatory trusts has been frequently rejected by modern authorities in this and all other jurisdictions. In 1 Bogert on Trusts, it is said in that regard at page 231:

"The tide has run so strongly against turning precatory expressions into words of trust that the ordinary words of request, recommendation, wish, and desire are quite generally construed to have no legal effect."

That conclusion is clearly expressed in 69 Corpus Juris at page 713, in the following language:

"To create a private trust the language must charge the trustee with a duty rather than discretion, or option to act or not to act as to him may seem best. . . . A bequest followed by directions to the legatee as to the use of the income from the property is an absolute gift rather than a trust. . . .

"It has been said, in effect, that according to the earlier cases when precatory words are used in a will, following what would otherwise be an absolute gift, a precatory trust will arise *if the subject-matter and objects affected by the precatory words are certain.* . . . According to the more

modern and prevailing view, however, precatory words of themselves are insufficient to create such a trust. The doctrine of precatory trusts is not to be extended. In order that a trust may arise from the use of precatory words, the court must be satisfied, from the words themselves, taken in connection with all the other terms of the disposition, that the testator's intention to create an express trust was *as full, complete, settled, and sure as though he had given the property to hold upon a trust declared in the ordinary manner.* . . . Where an absolute estate or interest is in terms given, precatory words which follow are treated as expressions of wish rather than of will, so that no trust is created. . . . A gift to enable the legatee to confer bounty on others is not a trust, but a beneficial legacy to him. . . . It is only where it is clear that precatory words were used by the testator *as positive directions* that they will be raised into such. . . . A trust is created if it clearly appears that the words were used in an imperative sense; but this only where the testator's desires can be ascertained with reasonable certainty, the subject and the object being clear.''

It follows that the will in this case did not create a voluntary trust. But that failure does not necessarily mean that the will is effective as an absolute conveyance of the entire estate. It appears to us that not only was the effort to create a voluntary trust by the use of precatory language void, but it also seems clear the testator did not intend to devise and bequeath the property mentioned in the fifth clause of the will to her brother absolutely, and the conveyance of that property therefore fails. If the probate court erred in construing the will in that regard then the bulk of the estate was undisposed of and since it was wrongfully distributed to Charles T. Rule, a resulting trust was automatically created for the benefit of the heirs according to the rules of succession. (*Estate of Ralston,* 1 Cal. (2d) 724 [37 Pac. (2d) 76, 96 A. L. R. 953]; *Wittfield* v. *Forster,* 124 Cal. 418 [57 Pac. 219]; 2 Restatement of the Law of Trusts, 1259, sec. 411.) In the text last cited, it is said:

''If real property is devised upon a trust which fails and there is no provision in the will effectively disposing of the residue of the testator's real property, the devisee holds it upon a resulting trust for the heir of the testator.''

The same rule applies to personal property under similar circumstances when it is undisposed of by the will and when it is wrongfully distributed to one who is not the absolute owner thereof.

We are of the opinion the will, construed in the light of surrounding circumstances as alleged in the proposed amended complaint, does not devise the residue of the estate to Charles T. Rule as sole beneficiary thereof. The will clearly bequeaths to him, absolutely, without reservation, all of the household goods and personal effects. If it had been the intention of the testatrix also to will to him the entire estate in the same manner there would have been no necessity for paragraph five of the will. The simple and clear way to have done so would have been to incorporate in the fourth paragraph all of her estate, including both real and personal property. The fact that she did not do so clearly indicates that she distinguished in the disposition of her estate between her household goods and the residue of her estate. It is a significant fact, indicating that she did not intend to make her brother Charles sole beneficiary of her entire estate valued at $300,000, that she had three other brothers to whom, according to the construction of the trial court, she gave nothing. In subdivision (b) of paragraph five of the will she uses language which is absolutely conflicting with the theory that she intended to make her brother Charles sole beneficiary of her estate. In effect, she says I trust my brother Charles and am confident he "will *distribute* my estate" according to our agreement and my wishes in that regard, as previously expressed in many discussions. That declaration is not a mere expression of a wish or desire that he would use a portion of his inherited property for the benefit of certain individuals or undisclosed causes. It is significant that the will specifically declares the testatrix has confidence to believe her brother "will distribute" her property consisting of almost the entire estate of the value of $300,000 to the parties or causes previously agreed upon in former conferences. That is inconsistent with the theory that *he was* entitled to *distribution* of the entire estate as the sole beneficiary thereof. The theory that the testatrix did not intend to convey her entire estate to her brother Charles, and upon the contrary that she intended to convey the residue mentioned in the fifth paragraph to him in trust

*to be distributed* in accordance with their previous agreement, seems to be conclusive from the sixth clause of the will which declares that ''If any devisee, legatee or beneficiary hereunder contest this will'', he shall be given the sum of $1 in lieu of any share of the estate he might otherwise inherit. That clause refutes the theory that Charles T. Rule was made the *sole beneficiary* of the will. It is absurd to hold that a sole beneficiary of the entire estate of a deceased person would contest the will. Paragraph seven of the will contains a clause equally inconsistent with the theory that Charles T. Rule was to become sole beneficiary of the entire estate, for it specifically provides that he shall be appointed ''guardian of the estate of any minor or incompetent person to whom distribution is made hereunder''. It is apparent the last-mentioned clause contemplates *distribution* of a part of the estate to minors or an incompetent person. No language could more clearly indicate that Charles was not to become the sole beneficiary or distributee of the entire estate.

Moreover, it is apparent the respondent knew the testatrix did not intend to make him sole beneficiary of her estate, for it is alleged he subsequently voluntarily conveyed property of the estate valued at $23,700 to three other heirs. Those conveyances were in the nature of an admission that Mr. Rule knew he was not sole beneficiary under the will. Yet he procured distribution of the entire estate by representing to the court that he was the sole beneficiary and entitled to the entire estate.

A careful consideration of the entire will, construed in the light of surrounding circumstances, convinces us beyond a doubt that the testatrix did not intend to will her entire estate absolutely to her brother Charles. ██ The language of that will may not be reasonably construed, under the provisions of section 104 of the Probate Code, to contain a mere recital of *reasons* why the testatrix gave the entire estate to her brother. That section declares that when ''A clear and distinct devise'' is made, mere subsequent reasons or explanations therefor shall not affect the absolute disposal of the property. The present will certainly does not *clearly devise* the residue of the property to Charles T. Rule. The intent of the testatrix appears to be clearly otherwise.

Since the apparent effort to create a voluntary trust in the residue of the property failed because the will does not designate the subject, purpose or beneficiaries, the residue of the estate mentioned in paragraph five of the will remains undisposed of. It therefore became intestate property in the possession of the distributee as a resulting trust for the benefit of the heirs pursuant to the rules of succession.

The foregoing principle, which is often reiterated in numerous authorities, is succinctly stated in the *Estate of Madsen,* 31 Cal. App. (2d) 240 [87 Pac. (2d) 903], as follows:

"It is . . . well settled that where, through extrinsic fraud practiced in probate proceedings, distributees have obtained property to which they are not entitled, equity will do justice not by overthrowing the decree of distribution but by declaring that the distributees hold the property in trust for the rightful owners. (Citing numerous authorities) . . . 'This character of relief is very common in the matter of fraudulent probate proceedings. The order or decree from the effect of which relief is sought cannot constitute a bar to such equitable action. As has been said, it is solely because of the order or decree, collaterally unassailable and valid on its face, that the equitable jurisdiction is necessary and exists.' "

The rule is well established that a decree of distribution is ordinarily conclusive of the rights of all heirs, legatees and devisees. (*Estate of Madsen, supra;* 11B Cal. Jur. 787, secs. 1290, et seq.) However, it has been uniformly held that equity will afford relief against a decree of distribution which has become final, when it has been procured by extrinsic fraud. (Civ. Code, sec. 2224; *Estate of Walker,* 160 Cal. 547 [117 Pac. 510, 36 L. R. A. (N. S.) 89]; *Bacon v. Bacon,* 150 Cal. 477 [89 Pac. 317]; *Sohler v. Sohler,* 135 Cal. 323 [67 Pac. 282, 87 Am. St. Rep. 98]; *Pico v. Cohn,* 91 Cal. 129 [25 Pac. 970, 27 Pac. 537, 25 Am. St. Rep. 159, 13 L. R. A. 336]; *Estate of Madsen, supra; Godfrey v. Godfrey,* 30 Cal. App. (2d) 370, 379 [86 Pac. (2d) 357]; 88 A. L. R. 1201, note; 2 Restatement of the Law of Trusts, 1259, sec. 411.)

It is alleged in the amended complaint that the property mentioned in the fifth paragraph of the will, which is undisposed of by the terms of that instrument, includes eight parcels of separate real property of the value of $90,000,

which reverts under section 229 of the Probate Code to the heirs of Charles F. Weber, deceased, the former husband of the testatrix, Sarah E. Weber, for the reason that it was given to her by her husband in joint tenancy, and neither of the spouses had surviving children or parents. We are satisfied that under such circumstances that portion of the property would revert to "the brothers and sisters of the deceased spouse and to their descendants by right of representation". ■ The balance of the undisposed property would go to the heirs of the testatrix according to the rules of succession. Section 229 of the Probate Code provided in part:

"If the decedent leaves no issue, and the estate or any portion thereof was separate property of a previously deceased spouse, and came to the decedent from such spouse by gift, descent, devise or bequest, such property goes in equal shares to . . . the brothers and sisters of the deceased spouse and to their descendants by right of representation."

■ The remaining question to be determined on this appeal is whether the amended complaint or the proposed second amended complaint alleges facts sufficient to establish extrinsic fraud in procuring to Charles T. Rule distribution of the property mentioned in paragraph five of the will. We are of the opinion the defendants should have been permitted to file their proposed second amended complaint, and that the court erred in refusing to grant their motion to do so. We shall consider the allegations of that proposed second amended complaint in determining whether extrinsic fraud has been sufficiently alleged therein.

The pleading alleges that the defendant Hattie Sears is a half sister of Charles F. Weber, deceased, and that the other defendants are children of John E. Weber, a deceased brother of the said husband of the testatrix; that Charles T. Rule knew of the existence and residences of said defendants, but failed to include them in the petition for probating the will or in the petition for distribution, or to give them notice thereof, and that they did not know of the distribution until April, 1938, one year after it had been entered. It is also alleged in effect that Charles T. Rule was guilty of fraud in failing to inform the probate court at the time of distribution of the secret trust created by his previous agree-

ment with the testatrix to distribute the property of the estate to the persons or causes designated by her; that it was not her intention to give him the entire estate absolutely and that the plaintiffs were not notified of the probating of the estate or the distribution thereof and were thereby prevented from appearing or participating in the proceeding for distribution.

It has been uniformly held that equity will relieve one from the effect of a judgment or decree which is procured by conduct which prevents an interested party from appearing and participating in the hearing or trial on its merits. (*Ringwalt* v. *Bank of America etc. Assn.*, 3 Cal. (2d) 680 [45 Pac. (2d) 967]; *Flood* v. *Templeton*, 152 Cal. 148 [92 Pac. 78, 13 L. R. A. (N. S.) 579]; *Pico* v. *Cohn, supra; Godfrey* v. *Godfrey, supra;* 15 Cal. Jur. 14, sec. 123; 88 A. L. R. 1201, note.) In the case of *Fealey* v. *Fealey*, 104 Cal. 354 [38 Pac. 49, 43 Am. St. Rep. 111], the court quotes with approval from the case of *Wickersham* v. *Comerford*, 96 Cal. 433 [31 Pac. 358], in which an order sustaining a demurrer to the complaint in behalf of creditors in an equitable suit to vacate a judgment setting aside a homestead to the widow of a deceased person, on the ground of extrinsic fraud, was reversed. In the Wickersham case a written agreement settling property rights had been executed by the spouses, and a separation occurred. Upon the hearing to set aside the homestead to the widow, she failed to call the court's attention to that agreement. The Supreme Court said: "It seems clear the defendant was not entitled to the homestead." It is further said, as grounds for reversal, that:

"She intentionally and wilfully suppressed and concealed from the court the said agreement to separate from her husband, and the fact of separation according to the agreement, for the purpose of deceiving and misleading the court; . . . and the concealment of the deed and fact of separation, did deceive and mislead the court to believe that she had resided with her husband as a part of his family immediately before his death, and that there had been no separation, and thereby induced the court to make the order setting apart the homestead."

In the present case the defendants allege, in almost the identical language previously quoted, that Charles T. Rule, knowing of the former agreement with the testatrix, failed

to disclose that fact to the court and thereby wilfully and intentionally deceived the court into making to him absolute distribution of the residue of the property, instead of receiving it in trust only for the heirs.

The failure to disclose the existence of persons interested in pending litigation, who are thereby prevented from participating therein, and which omission results in loss to them, is held to constitute extrinsic fraud against which equity will grant relief. (113 A. L. R. 1235, note.)

While the circumstances of this case present a close question as to whether the allegations of the complaint state sufficient facts to constitute extrinsic fraud, we are convinced they do clearly show that it was not the intention that Charles T. Rule should become sole beneficiary of his sister's will, and a grave injustice to the real beneficiaries will follow unless the decree is modified. That being true, we are of the opinion the court abused its discretion in refusing to permit the plaintiffs to file a second amended complaint to more fully state the facts.

For the foregoing reasons the order sustaining the demurrer and refusing to permit plaintiffs to amend the pleading is reversed. The court is directed to vacate the order refusing to permit the plaintiffs to amend their complaint, and they should be granted a reasonable time to amend that pleading.

Tuttle, J., and Pullen, P. J., concurred.

A petition for a rehearing was denied July 16, 1941, and respondents' petition for a hearing by the Supreme Court was denied August 14, 1941.