[Civ. No. 14788. Second Dist., Div. One. July 31, 1945.]

Estate of HAROLD L. LOUD, Deceased. MARGARET AUGUSTUS HOWARD, Appellant, v. ARCHIE CHESTER LOUD et al., as Executors, etc., Respondents.

Henry H. Draeger and Kenneth E. Grant for Appellant.

Arthur L. Erb and Richard C. Waltz for Respondents.

DORAN, J.—Harold L. Loud, an attorney at law, died at Santa Monica, California, on September 27, 1943, and a holographic will dated January 28, 1937, was duly admitted to probate, the decedent's two brothers, Archie Chester Loud and August Blanke Loud being appointed as executors. The dispositive portions of this will read as follows:

"First, I authorize and direct my executor, hereinafter named to pay out of my estate as soon as may be after my death all my just debts and funeral expenses.

"Second, I give devise and bequeath unto Margaret Augustus Howard the sum of ten thousand ($10,000) dollars to be hers absolutely and forever. This sum to be raised by the sale of as much of my personal property as becomes necessary to raise the aforesaid sum.

"Third, I give devise and bequeath unto my mother Ida Mary Loud to be hers absolutely and forever all the rest and residue of my estate, of every nature whatsoever or wheresoever situate, of which, at the time of my death, I may be seized or possessed, or to which I may be in any wise entitled.

"Fourth, In the event of the death of my mother Ida Mary Loud prior to that of my own, I give devise and bequeath the above mentioned residue to be equally divided between my brothers Archie Chester and August B. Loud, to be theirs absolutely and forever.

"Fifth, I hereby nominate and appoint my brothers Archie Chester Loud and August Blanke Loud as joint executors of this my last will and testament."

In the words of appellant's brief, "Decedent's brothers did not seek probate, as a codicil to the will, of a further holographic instrument signed by decedent and bearing the same date as the will. Thereafter, on March 25, 1944, Margaret Augustus Howard . . . petitioned the court for admission to probate of such instrument as a codicil to the will." The purported codicil, in decedent's handwriting, was found in the same compartment, with the will, and is as follows:

"Jan. 28th, 1937

Dear Aug and Arch:

This is my last will and testament and I want you to carry it out as I have stated and see that Margaret gets the money I have left her as soon as you can. She has been a good friend for a number of years and it is my hope and wish that she shall never be in want.

I would like to be cremated if there is no objection by any of you and the old ashes scattered to the four winds—However if any of you object to this procedure then do with my remains as you will. After all it can't make much difference to me—

You have both been good brothers and we have had a wonderful mother. It all goes to have made life worth while—

BILL."

It was stipulated that the above letter was in the decedent's

handwriting, that decedent was commonly known as "Bill," and that the salutation "Dear Aug and Arch" was addressed to the executors of the will.

The trial court found "That the document, dated January 28, 1937, the same date as the Will, is not a codicil, there being no testamentary intent; that the objections to its probate should be sustained and a probate of said Document should be denied," and rendered judgment accordingly.

In urging reversal of this ruling appellant makes the following contentions:

"1. The rejected instrument is testamentary in character and a codicil in that (a) it protects the Howard bequest of the will against reduction under the statutory provisions for contribution, and (b) it is dispositive in character in that, being directed to decedent's executors, it commands that provision be made to assure Miss Howard against want.

"2. In construing the rejected instrument, the probate court erred in rejecting evidence of surrounding circumstances."

It is argued in appellant's brief that, "should a pretermitted heir appear the specific bequest of $10,000.00 would be invaded proportionately with the residuary devise and bequest to decedent's mother to make up the share of the estate to which a pretermitted heir would be entitled," under the provisions of section 91 of the Probate Code, but that the purported codicil protects Miss Howard's bequest from such invasion since it indicates that "it was the obvious intention of the testator that it should be exempted from apportionment for any such contribution." This argument is, however, without merit, for as pointed out in the respondents' brief, "no facts were brought to the attention of the trial court by stipulation, or otherwise, which indicated any probability that there are or may be pretermitted heirs," and since appellant's petition indicates that the value of the estate is "in excess of $150,000.00," the possibility of the specific bequest being invaded is speculative and remote, if, indeed, it exists at all. The record shows that the deceased died September 27, 1943, and no child has yet appeared.

What may be denominated as appellant's principal contention is that "The rejected instrument is dispositive in that, being directed to the executors, it commands provision to assure Miss Howard against want." This contention is based upon the written statement, "It is my hope and wish that she

(Miss Howard) shall never be in want." By these words, appellant maintains, "In legal effect, then, the executors are directed and commanded to make such provision as will insure Miss Howard from want, and a testamentary trust is created for her benefit." The respondents, on the other hand, assert that the rejected instrument is not dispositive or testamentary in character, and that deceased's expression of hope and wish that Miss Howard "shall never be in want" is insufficient to create a precatory trust.

Section 2221 of the Civil Code declares that a voluntary trust is created "by any words or acts of the trustor, indicating with reasonable certainty: (1) An intention on the part of the trustor to create a trust, and, (2) The subject, purpose and beneficiary of the trust." While it is doubtless true that the subject, purpose and beneficiary of the alleged trust are designated with reasonable certainty, it does not satisfactorily appear that there was "An intention on the part of the trustor to create a trust," without which intention, obviously no voluntary trust can exist. In this connection it may be noted that the trial court took judicial notice that the deceased was a practicing lawyer. It is therefore a reasonable assumption that if the testator had intended to create a trust in appellant's favor in addition to the specific bequest of $10,000, such intention would have been evidenced by some formal and definite language. In the purported codicil now under consideration it is clearly indicated that decedent desired the formal will to stand unchanged for at the inception of the letter it is stated, "This is my last will and testament and I want you to carry it out *as I have stated* and see that Margaret (appellant) gets the money *I have left her* as soon as you can." (Italics added.) The purported codicil was found in the same compartment with the will and bore the same date. Such facts lead to the conclusion that the formal will deposited with the letter must have been the instrument referred to in the latter when the testator said "This is my last will and testament," and that the testator intended only that the executors should "carry it out as I have stated." The writer then went on to informally admonish the executors to "see that Margaret gets the money I have left her as soon as you can," and further expressed the quite natural hope that "she shall never be in want." The appellants have cited no case, decided under the present California law, in which similar language has been

construed as creating a trust. The existing cases, in fact, are quite to the contrary. Moreover, a judicial approval of appellant's contention in reference to this matter would create a precedent the dangers of which are too obvious to require comment.

The appellant, seeking to establish a precatory trust, states that the case of *Colton* v. *Colton*, 172 U.S. 300 [8 S.Ct. 1164, 32 L.Ed. 138] is full authority for the contention here made. There the decedent, a resident of California, left a will reading as follows: "I give and bequeath to my said wife, Ellen M. Colton, all of the estate, real and personal, of which I shall die seized or possessed or entitled to. I recommend to her the care and protection of my mother and sister, and request her to make such gift and provision for them as in her judgment will be best." It was there held that a trust was created in favor of the mother and sister by reason of the precatory language in the will. But unfortunately for appellant's position, the Colton case does not represent the present California view, nor is it helpful in the instant case. In *Sears* v. *Rule*, 45 Cal.App.2d 374, 380 [114 P.2d 57], the court said, "The early liberal construction of language upholding precatory trusts has been frequently rejected by modern authorities in this and all other jurisdictions." In the Sears case the court quotes from 1 Bogert on Trusts, page 231 as follows: " 'The tide has run so strongly against turning precatory expressions into words of trust that the ordinary words of request, recommendation, wish and desire are quite generally construed to have no legal effect.' " Pursuant to this rule the Sears case held that a voluntary trust was not created by a will which gave the residue of an estate to a named person and which declared that testator's reason for so doing was "that I am confident, and place my trust in him to the extent that he will distribute my estate in accordance with my wishes he and I have often discussed." In that case the rule as expressed in 69 Corpus Juris, page 717, is quoted with approval: "In order that a trust may arise from precatory words, the court must be satisfied, from the words themselves, taken in connection with all the other terms of the disposition, that the testator's intention to create an express trust was *as full, complete, and sure as though he had given the property to hold upon a trust declared in the ordinary manner.*" (Italics added.)

Another case not dissimilar to the present litigation is that

of *Estate of Lee,* 104 Cal.App. 15 [84 P. 948] in which a holographic will instructed testator's brothers and sisters to "take care of Brother Will." The court held that such words did not create a precatory trust, and further stated that the later rule of decision in respect to this matter had been "recognized and approved in section 1322 of the Civil Code [now Section 104, Probate Code], which provides: 'A clear and distinct devise or bequest cannot be affected by any reasons assigned therefor, or by any other words not equally clear and distinct. . . .'" The appellant in the Lee case, as does appellant here, relied upon *Colton* v. *Colton,* 127 U.S. 300 [8 S.Ct. 1164, 32 L.Ed. 138] hereinbefore mentioned, and the opinion in the Lee case specifically states that the Colton case "repeatedly has been rejected in these jurisdictions as out of harmony with this later rule." The Lee case further states that "Any uncertainty as to the authority of the Colton case in this state was set at rest in the *Estate of Mitchell,* 160 Cal. 618, 622 [117 P. 774]," where the court said, "If that decision [the Colton case] was in any particular inconsistent with our own decisions on the subject, it would not be binding authority. The interpretation of wills is not a question upon which the federal courts control the state courts."

In appellant's reply brief it is stated that "With such authorities appellant has no quarrel." Although conceding that these authorities "follow a rule long established in California and elsewhere," it is nevertheless maintained that "this expression of hope and desire to the executors imposes an imperative obligation and in legal effect commands fulfillment of the testator's hope and desire by the executors."

While it is doubtless true that in a proper case, where the direction to an executor is sufficiently definite and imperative, an intent to create a trust may be legitimately inferred, it is obvious that the present situation does not present such a case.

The so-called codicil here under consideration does not direct or command or even suggest that the executors shall see to it that Miss Howard "shall never be in want." Having made a definite provision to this end in the will, nothing more is expressed in the purported codicil than, as the testator has said, a mere "hope and wish that she shall never be in want." Under no theory can such words be construed as evidencing an intention to abandon or change the will; nor is such language sufficient to create a trust.

In urging a reversal of the ruling which denied probate to the purported codicil, appellant presents the further point that "In construing the testamentary character of the instrument the court erred in rejecting evidence of surrounding circumstances." A formal offer was made by appellant offering to prove among other things that Miss Howard and the testator had been engaged to be married since 1928, their marriage being prevented by the objections of the decedent's mother; that in 1934 the deceased started contributing to Miss Howard's support, paying her $200 a month in addition to providing her with living quarters, an automobile and various gifts, which allowance was increased in 1938 to $300 per month; that the amount given her in 1941 approximated $7,500, and that such contributions continued to the date of testator's death. *Estate of Spitzer,* 196 Cal. 301, 307 [237 P. 739] is relied upon where the court quotes with approval from *Estate of Beffa,* 54 Cal.App. 186 [201 P. 616], as follows, " ' "It is well settled in this country and in England, first, that in determining whether the instrument propounded was intended to be testamentary, reference will be had to the surrounding circumstances, and the language will be construed in the light of these circumstances. . . ." (*Clarke* v. *Ransom,* 50 Cal. [595] 600).' " It is significant, however, that none of these cases suggest that surrounding circumstances may be used to create a will or codicil which legally does not exist. In *Estate of Spitzer,* relied upon by appellant, the court says, "it is true that courts will not make a will for a decedent who has failed to do so for himself, . . ." Indeed, no one would seriously deny that such is and always has been the rule.

The trial court rightly concluded that the purported codicil "contains no dispositive intent whatever and therefore it is not a codicil." Such being the case, it is obvious that no surrounding circumstances, however cogent or compelling, could supply this dispositive intent. As was said by the trial court in denying the offer of proof, "the surrounding circumstances may be shown in certain situations to clear up ambiguity of language and things of that kind, but even if the testimony offered were to be received, that testimony taken in connection with the document would still leave me of the view, gentlemen, that this is not a testamentary disposition and therefore it is not entitled to admission as a codicil to the will, which has been admitted to probate, and which as a will is

not assailed here.'' ■ Assuming therefore, but only for the sake of argument, that the trial court had been wrong in excluding the offered evidence of surrounding circumstances, nevertheless such exclusion would have been harmless since even if such testimony had been received, the decision would still have been adverse to the appellant's contentions.

■ Section 74 of the Probate Code provides that ''Except as hereinabove provided, no written will, nor any part thereof, can be revoked or altered otherwise than: (1) By a written will, or other writing of the testator, declaring such revocation or alteration, and executed with the same formalities required for the execution of a will; . . .'' The purported codicil although in the handwriting of Mr. Loud, indicates no intent to revoke or modify the will.

■ In the words of 26 California Jurisprudence, page 809: ''A later testamentary writing which is supplementary to an earlier instrument is termed a 'codicil'.'' However, as said in Schuler on Wills, volume 1, sections 393, 468, ''A mere reference to a Will with no testamentary intent is not a codicil.'' The quotation from Schuler is particularly pertinent to the present situation. The purported codicil in the present case is no more, legally speaking, than a ''mere reference to a Will,'' and in place of showing an intent to change the will by the creation of a trust, clearly indicates that the will provisions were to be carried out in toto. The letter in question was not a codicil.

The judgment appealed from is therefore affirmed.

York, P. J., and White, J., concurred.