ESTATE OF JOHN LOGAN ORCUTT, DECEASED, MARSHALL LOGAN ORCUTT, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Orcutt v. Commissioner
Docket No. 641-75.
United States Tax Court
T.C. Memo 1977-178; 1977 Tax Ct. Memo LEXIS 260; 36 T.C.M. (CCH) 746; T.C.M. (RIA) 770178; June 13, 1977, Filed Phillip Singer, for the petitioner. Alan R. Herson, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined a deficiency in petitioner's estate tax in the amount of $7,794.04. The issues for decision [1] are as follows: 1) Whether an insurance policy on the life of decedent, held by decedent's wife (who was also the beneficiary), represented community property of decedent and his wife, with the result that one-half of the proceeds therefrom should have been included in *261 decedent's gross estate. 2) Whether the estate's claimed deduction of $20,650 for estate administration expenses should be reduced by one-half, which respondent has deemed attributable to the surviving spouse's one-half community interest in the estate assets. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner-executor resided in California at the time of filing the petition herein. He filed the estate tax return with the District Director of Internal Revenue at Los Angeles, California. John Logan Orcutt ("decedent") married Alice Pedersen Orcutt ("Alice") prior to 1941. They remained married until decedent's death, and at all times relevant were residents of California. Decedent died April 18, 1971. In 1941 decedent's mother, Mary Logan Orcutt, purchased a whole life insurance policy on the life of decedent from Manufacturers Life Insurance Company ("Manufacturers Life"), Toronto, Canada. Decedent's mother was the named beneficiary. On April 24, 1953, decedent's mother executed an assignment of all *262 her right, title and interest in the policy to Alice. There was no consideration in money or money's worth for such assignment. After making this arrangement, decedent's mother expressed to Alice her wishes with respect to the use of the insurance policy and proceeds. Eventually, Alice suggested that decedent's mother put her desires into a letter, and that the family would endeavor to comply as fully as possible with those wishes. Such a letter was prepared, dated March 15, 1954, and reads as follows: Dear Alice, This insurance policy on the life of your husband, John, is presented to you, as beneficiary, for the purpose, and with the distinct understanding, that you will use the proceeds, when they revert to you, conscientiously for the welfare of your children, and yourself, either by using the money to help pay the inheritance tax on John's estate, or otherwise, as the best interests of the family should dictate. I especially desire that the education of your children be as complete, as possible, so that they may be fitted to occupy any station in life to which they may be called. Also, in accordance with the known wishes of Grandfather Orcutt, of my husband, and *263 of yours, I desire that the Santa Paula ranch property be retained as a family possession, as long as possible, and I trust that you and your children will use your best endeavors to insure its continuance in that status. With much love /s/ Mary Logan Orcutt Accepted and approved - Signed - /s/ Alice Pedersen Orcutt date - April 1, 1954 Decedent's mother continued to pay the annual premiums on the insurance policy through 1964. Thereafter, Alice paid the premiums from community funds. On December 7, 1970, decedent and Alice executed an agreement pursuant to which all of their separate property was determined to constitute community property. The agreement recited that because a substantial portion of the property owned or possessed by the parties had been acquired through inheritance or gift, thereafter all such property (and all property thereafter acquired) would be deemed community property, notwithstanding the manner in which title had been held or the manner in which property had been acquired. No specific items of property were mentioned in this agreement. As part of the probate proceedings following decedent's death, petitioner-executor filed a petition in California *264 Superior Court for an order declaring that all property owned or held by decedent and Alice at the time of decedent's death was community property, except for the Manufacturers Life Insurance Company policy, which was Alice's separate property. Such petition alleged that the life insurance policy had not been intended to be covered by the 1970 agreement in which the parties declared all their property to be community property: that it had been their desire to maintain the policy as the separate property of Alice "in order to carry out the purposes and intent that caused the execution of said policy * * *." The foregoing petition, after having been agreed and stipulated to by the Assistant Inheritance Tax Attorney for the State Controller, was granted by court order issued in January 1972, in which the facts alleged in the petition were found to be true, including the allegation that the Manufacturers Life insurance policy was the separate property of Alice. [2] The court order, however, concludes with the following: * * * [Nothing] contained in this order shall restrict or foreclose the State Controller in or from the determination of any proper California inheritance tax or *265 taxes which may be or become due under the California laws in effect at the date of decedent's death, by reason of the death of decedent and on account of the conversion by decedent of separate property of the decedent into community property of decedent and his surviving spouse or in any way limit or restrict the rights of the State Controller or of the petitioner, or of other interested persons, to file objections to the Inheritance Tax Referee's Report to the Court, or to object to or to move the vacation of any Court order made in pursuance thereof. The proceeds of the Manufacturers Life insurance policy, $50,254.80, were not included in petitioner's gross estate in its estate tax return. Respondent determined that one-half of such proceeds, $25,127.40, must be included in the gross estate as decedent's community property interest in the policy. Petitioner's estate tax return claimed a deduction for estate administration *266 expenses in the total amount of $20,650, consisting of estimated executors' commissions ($9,500), attorneys' fees ($9,500), accountants' fees ($750) and miscellaneous other fees and costs ( $900). Respondent disallowed one-half of this amount, $10,325, as attributable to Alice's one-half community interest in the estate assets. ULTIMATE FINDING OF FACT The Manufacturers Life insurance policy held by Alice when decedent died was held by her as trustee for the benefit of herself and her children and was not held as community property of Alice and decedent. OPINION Petitioner has excluded the entire amount of the proceeds from the Manufacturers Life insurance policy from its gross estate on the grounds decedent had none of the incidents of ownership of that policy at the time of his death. Although the policy was in the name of Alice, to whom it had been assigned by decedent's mother, respondent maintains that it was held by her as community property (in which decedent had a one-half interest, includible in his gross estate), [3] as a result of the 1970 agreement in which decedent and Alice mutually declared all of their property to be community property. Petitioner contends *267 that the Manufacturers Life policy was not subject to the 1970 agreement. At trial and on brief, petitioner has taken the position that the insurance policy in question was held by Alice subject to a trust created at the time the policy was transferred to Alice by decedent's mother; that the policy was transferred to Alice in trust for certain purposes. This being the case, petitioner argues Alice held the policy as a trustee and could not have transferred a community interest in it to decedent as part of the 1970 community property agreement. California Civil Code, sec. 2221 provides that "a voluntary trust is created, as to the trustor and beneficiary, by any words or acts of the trustor, indicating with reasonable certainty: (1) An intention on the part of the trustor to create a trust, and, (2) The subject, purpose, and beneficiary of the trust." Section 2222 of the California Civil Code provides that "* * * a voluntary trust is created, as to the trustee, by *268 any words or acts of his indicating, with reasonable certainty: (1) His acceptance of the trust, or his acknowledgement, made upon sufficient consideration, of its existence, and, (2) The subject, purpose, and beneficiary of the trust." See also Reagh v. Kelley,10 Cal. App. 3d 1082, 89 Cal. Rptr. 425 (1st Dist. Ct. App. 1970), containing a thorough analysis of the requirements for establishment of a trust under California law. We believe that the assignment by decedent's mother of the insurance policy to Alice, coupled with the subsequent March 15, 1954, letter to which Alice signified written acceptance, had the legal effect of creating a trust with respect to the insurance policy under California law. In terms of the requirements of sections 2221 and 2222 of the California Civil Code, we believe that there was an intention on the part of decedent's mother, as trustor, to create a trust, and an acceptance of such trust on the part of Alice, as trustee. These elements of intent are reflected in the March 15, 1954, letter, [4] even though the letter did not contain technical legal language nor did it specify that the property was to be held "in trust." See In Re Loud's Estate,70 Cal. App. 2d 399, 161 P.2d 49 (1945); *269 Hayden Plan Co. v. Wood,97 Cal. App. 1, 275 P. 248 (1929). Pointing to the fact that the letter from decedent's mother was not written until nearly a year after she had formally assigned the insurance policy which is the subject of the alleged trust, respondent argues that as soon as the policy was formally assigned to Alice in 1953 it became community property to Alice and decedent, and neither the subsequent letter from the assignor nor Alice's written acceptance of such letter could change that status. This argument is based upon respondent's theory that decedent and Alice had orally agreed at various times during their marriage that all of their property would be community property, *270 and that such oral agreements operated to make the insurance policy community property as soon as it was assigned to Alice. However, whatever informal understandings or intentions may have existed through the duration of their marriage, these apparently never reached the legal significance attributed by respondent, since the parties found it necessary to execute a written community property agreement in 1970 (in which they recited that they each had previously acquired separate property by gift or inheritance). Sections 2221 and 2222 require that the trust have a "subject, purpose and beneficiary." It is clear that the subject of the alleged trust is the Manufacturers Life insurance policy. It also seems clear that the trust beneficiaries are Alice and her children. Respondent, however, contends that the alleged trust is not sufficiently certain as to purpose. We disagree. The purposes mentioned in the letter, although recited as related alternatives in a somewhat rambling fashion, are sufficiently certain to meet the standards of California trust law. The basic purpose is recited as "the welfare of your [Alice's] children and yourself." The letter goes on to recite possible *271 alternative uses of the trust funds within this general ambit, including payment of inheritance taxes, education of the children, and retention of the family ranch. We believe that these are sufficiently certain trust purposes within the requirements of California law. Reagh v. Kelley, supra, at 1093-1094. The cases relied upon by respondent in support of his position to the contrary, In Re Ralston's Estate,37 P.2d 76 (Cal. 1934), and In Re Mallon's Estate,93 P.2d 245 (4th Dist. Ct. App. 1939), are inapposite. Respondent contends further that the March 15, 1954, letter from decedent's mother could not have created a trust because it did no more than express her "desires" in mere precatory language. Again, we disagree. The letter begins, "This insurance policy * * * is presented to you * * * for the purpose and with the distinct understanding, that you will use the proceeds * * * [for purposes stated, as previously discussed in this Opinion]." This language is far from merely precatory, as that word is used in the cases relied upon by respondent in which trusts were held invalid. Moreover, the above-quoted specific language *272 of the letter is buttressed by a formal written acceptance by the transferee, Alice, appended to the letter. Certainly such an "acceptance" would not have been appropriate or required if the transferor had intended a purely precatory expression of desires. Finally, we note that respondent's position is contrary to the finding and order of the California court administering decedent's estate, which held upon petition of the executor, that the Manufacturers Life insurance policy was not includible in the decedent's estate. While we recognize that this petition was essentially not contested and that the court's order was not binding as to future inheritance tax determinations, nonetheless, the granting of the petition is not without substantial merit. Respondent has presented an alternative argument on brief that the reference in the March 15, 1954, letter to the use of the insurance proceeds to pay "inheritance taxes" would bring the insurance proceeds into decedent's gross estate even if there was a valid trust, since the estate would be one of the beneficiaries of the trust. Under sec. 20.2042-1(b), Estate and Gift Tax Regs., proceeds of insurance are includible in the gross *273 estate if they are receivable by or for the benefit of the estate. However, giving the term "inheritance taxes" its normally used meaning of state or local death taxes imposed upon the beneficiaries of the estate, rather than the estate itself, we consider sec. 20.2042-1(b) inapplicable. Accordingly, we hold that no portion of the proceeds of the Manufactuers Life insurance policy is includible in decedent's gross estate. The second issue herein involves the deduction by the petitioner of certain estate administration expenses, totaling $20,650. Respondent has disallowed 50 percent of this amount as representing costs chargeable to the surviving spouse's share of community property under California law. Accordingly, he contends that only the 50 percent, relating to decedent's half interest in the community property, is deductible under section 2053(a) [5] of the Internal Revenue Code of 1954. The correctness of respondent's position on this issue is clearly established beyond cavil. *274 Estate administration expenses are deductible under section 2053(a) only if they are "allowable by the laws of the jurisdiction * * * under which the estate is being administered." Under section 202 of the California Probate Code, before its amendment in 1975, the half interest in community property which passes to the surviving spouse upon her husband's death is chargeable with a proportionate share of her husband's debts, funeral and estate administration expenses. In United States v. Stapf,375 U.S. 118, 130-134 (1963) the Supreme Court held that when state law made the surviving spouse's share of community property liable for a portion of the debts and obligations of the decedent nd his estate, no deduction was available to the estate for this portion under the predecessor of section 2053. See also Estate of Hutson v. Commissioner,49 T.C. 495 (1968) and Pfeiffer v. United States,310 F. Supp. 392 (E.D. Cal. 1969). Petitioner's tilt against the weight of this authority is inspired by a change in section 202 of the California Probate Code which became effective with respect to persons dying on or after July 1, 1975. The amendment *275 provides, in effect, that the surviving spouse's interest in community property need not be administered as part of the probate estate of the decedent. The effect of this amendment upon the application of the Stapf holding to post-1975 California estates remains to be seen. Clearly, the 1975 amendment does not affect the controlling authorities in the instant case, involving the estate of a decedent who died in 1971. Petitioner contends that although the 1975 amendment is not applicable per se to decedent's estate, its enactment demonstrates that the rationale behind the previously established rules allocating half of the estate expenses to the survivor's share of the community property was faulty. Petitioner's argument in this connection is abstruse and not sufficiently persuasive to warrant detailed exposition herein. Suffice it to say, however, that regardless of the effect of the amendment of section 202 of the California Probate Code upon the Federal estate tax deductibility of California estate administration expenses in the future, such amendment could not have changed Supreme-Court-established principles theretofore applicable. Accordingly, respondent's disallowance *276 of one-half of the claimed deductions for estate administration expenses must be sustained. Decision will be entered under Rule 155. Footnotes
1. Several of the adjustments made by respondent in the notice of deficiency were not challenged by petitioner in the petition.↩
2. While the parties agreed and the court found that the insurance policy did not constitute a part of the community property of the decedent and Alice, no issue was raised in this proceeding as to whether the policy was transferred to Alice as trustee.↩
3. Sec. 2042, I.R.C. 1954, as amended. Cf., Rev. Rul. 67-228, 1967-2 C.B. 331↩.
4. While it is true that this letter, which in this case constitutes the trust declaration, was not written until nearly a year after the transfer of the trust res (the insurance policy) to the trustee, ample authority exists that the transfer and the declaration may be by separate documents and that these events need not coincide. Reagh v. Kelley,10 Cal. App. 3d 1082, 89 Cal. Rptr. 425↩ (1st Dist. Ct. App. 1970), and cases cited therein at pp. 1095 and 1096.
5. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.↩