[Sac. No. 5217. In Bank.—February 9, 1939.]

JOUKO HERBERT AHO et al., Respondents, v. LOUISE KUSNERT, as Executrix, etc., Appellants.

688

H. C. Nelson for Appellant.

Irwin T. Quinn for Respondents.

SEAWELL, J.—Respondents brought this action against the executrix of the will of their stepfather to establish a trust in a parcel of real property. Said property was purchased by their mother and stepfather as a family home, and upon the death of their mother was distributed to their stepfather as community property. Plaintiffs alleged that said property was in fact the separate property of their mother, which fact their stepfather concealed from his attorney and from the court, and thereby procured distribution to himself as community property; that he caused his attorney to represent to them that the property was community and that he was entitled to distribution thereof; and that in reliance on this representation and the promise of their stepfather that he would make a will leaving it to them, they made no appearance in the proceeding for the probate of their mother's estate. In a second count plaintiffs alleged that their stepfather induced their mother to purchase the property with her separate funds in reliance on his representation and promise that plaintiffs should have the property when the mother and stepfather ''were gone''. In violation of said promise, he devised the property to Louise Kusnert, defendant herein, whom he married after the death of plaintiffs' mother. The court gave judgment for plaintiffs for the whole of said property, from which defendant prosecutes this appeal.

Plaintiffs' father died in 1924. About a year later their mother, then Elizabeth Aho, married their stepfather, Gustaf

Kusnert. Kusnert moved into the Aho family home, a rented house in Falk, near Eureka. Plaintiff Alli Price was then a student at the State Teachers College at Arcata, and plaintiff Jouko Herbert Aho was attending high school. The property which is the subject of this action was purchased in March, 1926. It is located in Eureka. The contract of sale provided for a purchase price of $3,600, with a down payment of $1,000, which was made, and payments of $40 a month thereafter. Payments were completed in advance of the time provided in the contract, and on November 3, 1928, a deed was executed to Gustaf and Elizabeth Kusnert. Mrs. Kusnert died intestate in April, 1930.

Plaintiffs herein contend that approximately $1800, which is less than one-half the amount paid for the house as principal and interest, was paid from separate funds of their mother, the balance being paid from community earnings of their mother and stepfather. The evidence is insufficient to establish that so large an amount was paid from the separate funds of their mother. But however this may be, payment from separate funds of the wife of not more than half the purchase price of property taken in the name of husband and wife, does not establish ownership by the wife as her separate property of the entire interest in the property. Furthermore, the testimony of plaintiffs themselves, several times reiterated, that the understanding between their mother and stepfather was that they were to have the property when both their mother and stepfather ''were gone'', negatives the idea that it was the intent of their mother that said property, or even an undivided half interest therein, should be distributed on her death as her separate property, one-third to each of them and one-third to their stepfather.

But the judgment for plaintiffs must be sustained on the theory that separate funds of their mother, and her earnings after her marriage to Kusnert, were invested in the purchase of the property on the understanding and agreement with their stepfather that if he survived her plaintiffs should succeed to the property upon his death.

At the time of the death of their own father in 1924, their mother deposited life insurance money paid to her in the sum of $1268.66 in a joint bank account which she and her husband had maintained, bringing the balance in said account to $1544.18. The sum of $437.51 was on deposit in another account at the death of their father. When the Eureka home

was purchased in March, 1926, after their mother's marriage to Kusnert, $450 was withdrawn from the larger account to apply on the down payment, and on July 30, 1926, $500 withdrawn from these accounts was applied on the purchase price. Although not clearly shown by the evidence, it is possible that other separate funds of the mother were paid on the purchase price. Plaintiffs also testified that $600 of their mother's separate funds was applied on the purchase of an automobile for $800 after her marriage to Kusnert.

Kusnert earned between $100 and $140 a month as a lumber mill worker. At the time of his marriage to plaintiffs' mother in 1925 there was a balance of $9.93 in his bank account, and he had no other property. Plaintiffs became self-supporting in 1926.

During both her first and second marriages plaintiffs' mother added to the family income by selling milk, butter and eggs, by doing laundry for the lumber mill workers, and by doing domestic work outside her home. The evidence shows that she entered into the purchase of the Eureka home with some reluctance, that she thought it too expensive for their means, but was reassured by Kusnert, who impressed upon her that when they "were gone" it would be a valuable property for the children, meaning plaintiffs.

Upon the death of their mother, Kusnert promised plaintiffs to carry out the understanding had with her when the property was purchased. He did in fact execute a will in their favor on the same day he signed the petition for letters of administration on their mother's estate. He remarried in 1931, about a year after their mother's death, and soon thereafter drew a will devising his estate, consisting of this parcel of real property, to his second wife. Plaintiffs were not informed of this will. Kusnert died on July 15, 1935.

▌By reason of his promise and understanding with plaintiffs' mother, Kusnert, upon her death, received title to real property paid for in part by her separate funds and in part by community funds. He broke his promise to her when he devised said property to his second wife. In such circumstances equity, through fastening a trust upon the property, will secure to plaintiffs the benefits of said promise although orally made. (*Lauricella* v. *Lauricella,* 161 Cal. 61 [118 Pac. 430] ; *Cooney* v. *Glynn,* 157 Cal. 583 [108 Pac. 506] ; *Allen* v. *Meyers,* 5 Cal. (2d) 311 [54 Pac. (2d) 450] ;

*Miller* v. *Forster,* 131 Cal. App. 509 [21 Pac. (2d) 678] ; *Prior* v. *Andrews,* 83 Cal. App. 782 [257 Pac. 560] ; *Rundell* v. *McDonald,* 62 Cal. App. 721 [217 Pac. 1082] ; 25 Cal. Jur. 170, 174–177.) Kusnert's compliance with his promise was not dependent on his making a will in plaintiffs' favor, since in the event of his intestacy they would have succeeded to this property. (Sec. 228, Probate Code; *Estate of Mc-Arthur,* 210 Cal. 439 [292 Pac. 469, 72 A. L. R. 1318].)

The judgment is affirmed.

Shenk, J., Curtis, J., Langdon, J., Edmonds, J., Houser, J., and Waste, C. J., concurred.