[L. A. No. 18818.   In Bank.   Nov. 1, 1945.]

HATTIE SEARS et al., Plaintiffs and Respondents, v.
  CHARLES T. RULE, Appellant; MINNIE B. COTTON,
  Defendant and Respondent.

Kenneth E. Grant, George T. Warren, Henry H. Draeger and A. A. Goldstone for Appellant.

Edwin J. Miller, Ralph W. Miller and Edwin L. Smith for Plaintiffs and Respondents.

O'Melveny & Myers, Pierce Works and Howard E. Forster for Defendant and Respondent.

GIBSON, C. J.—Charles F. Weber died in 1934, leaving all his property to his wife, Sarah E. Weber. Mrs. Weber

died in January, 1936. Plaintiffs and cross-defendants (hereinafter called plaintiffs) are the remaining heirs of Charles Weber. They brought this action to impress a trust upon property distributed from the estate of Mrs. Weber to defendant Charles T. Rule, her brother, as sole beneficiary under her will. The complaint alleged that the decree of distribution in the estate of Mrs. Weber had been procured through the extrinsic fraud of Charles Rule, that in fact the decedent died intestate, and that plaintiffs were entitled to the property as her statutory heirs under Probate Code section 229. Other persons, including James H. Rule (who died after this action was filed) and John E. Rule, the two brothers of defendant Charles Rule, were named as defendants solely because of their having directly or indirectly received some of the property from Charles Rule.

A demurrer was sustained to the first amended complaint, and the ensuing judgment of dismissal was reversed upon a prior appeal. (*Sears* v. *Rule,* 45 Cal.App.2d 374 [114 P.2d 57].) Thereafter, but before trial, a cross-complaint was filed by Mrs. Minnie Cotton, a niece of Mrs. Weber, seeking relief similar to that demanded by plaintiffs. After a trial without a jury a judgment was rendered in favor of plaintiffs and cross-complainant Mrs. Cotton. Defendant Charles Rule appealed from the judgment.

The trial court found that Mr. and Mrs. Weber were married in 1904, came to California in 1920, and thereafter agreed that all their property, regardless of nominal title, should constitute community property, and that at the death of Mr. Weber all their property (with one exception, a parcel of real property transferred to Mrs. Weber as a gift) was community property. After Mr. Weber's death his heirs, including plaintiffs, executed instruments purporting to release and quitclaim to Mrs. Weber any interests they had or might acquire in Mr. Weber's estate. (A demurrer to a separate defense based upon these instruments was sustained.) The court also found that after Mrs. Weber's death all the property in her estate, with the exception above noted, was likewise community property of herself and her deceased husband.

Mrs. Weber's will provided, in article four: "I give, devise and bequeath to my brother, Charles T. Rule, of Los Angeles, California, all my household furniture, furnishings, silverware, jewelry, trinkets, clothing and personal effects; also my automobile.'' Article five reads: "All the rest, residue and remainder of my estate, of whatever kind and character, and

wheresoever situated at the time of my decease, I give devise and bequeath as follows, to-wit: (a) To my brother, Charles T. Rule, of Los Angeles, California, the whole thereof; and in the event he should fail to survive distribution to him, then to my heirs in accordance with the laws of succession of the State of California. (b) The reason of making my brother, Charles T. Rule, aforesaid, the sole beneficiary of my estate, is that I am confident, and place my trust in him to the extent, that he will distribute my estate in accordance with my wishes he and I have often discussed.''

Article six provided that if ''any devisee, legatee or beneficiary hereunder'' should contest the will, such person should receive one dollar and no more; and article seven named defendant executor and ''Guardian of the estate of any minor or incompetent person to whom distribution is made hereunder. . . .'' Defendant was the only ''beneficiary'' mentioned by name.

Defendant qualified as executor and proceeded to administer the estate. During the course of administration he appropriated certain property of the estate without listing it in the inventory or otherwise accounting for it to the probate court. He also paid certain sums and transferred certain property to John E. Rule, James H. Rule, and Mrs. Cotton. Portions of the cash payments thus made were listed in defendant's final accounting as ''directed to be provided for in last Will of deceased by Executor.'' In his petition for distribution defendant represented to the probate court that he was entitled to the entire estate of Sarah Weber, as sole beneficiary under her will, and on March 15, 1937, the probate court made its decree distributing the whole of the estate to him absolutely. However, he has never been discharged as executor.

The trial court found that Sarah Weber did not intend to leave any of her property, except the household furniture and other items mentioned in article four of the will, to defendant absolutely, but that she intended to leave the residue to him ''in trust only, for the beneficiaries previously agreed upon and understood between herself and Charles T. Rule.'' The court concluded that the attempted trust failed because the will ''did not name the object or purpose . . . or identify the beneficiaries thereof'' and that the probate court should have distributed the property according to the laws

of intestate succession, but that it made the decree it did as a result of defendant's fraud.

The court concluded that a trust should be impressed upon all the property of the estate of Sarah Weber remaining in defendant's possession, and upon all property acquired with the proceeds of any such property distributed to or appropriated by defendant. It decreed that John E. Rule was the owner of two specified parcels of real property, that as to the remaining property plaintiffs were owners of undivided interests amounting to one-half thereof and cross-complainant the owner of an undivided one-eighth thereof, that defendant and his wife should execute and deliver to plaintiffs and cross-complainant deeds and transfers of the undivided interests, and that title thereto was quieted in plaintiffs and cross-complainant. The judgment included money awards to plaintiffs and cross-complainant based upon findings with respect to the property and money distributed to defendant by the probate court, moneys received by him but not accounted for to the probate court, moneys from dividends, interest, rents, and other income, and the reasonable value of premises occupied by defendant and his son and daughter, with interest thereon. The sums allowed by the original judgment totalled $137,525.53, but on motion for new trial the awards were reduced to the aggregate sum of $93,206.26. The trial court impressed a lien upon defendant's remaining three-eighths interest in the property to secure the money judgment. Defendant took this appeal.

I. *Sufficiency of evidence to establish a trust for the benefit of the heirs of Mrs. Weber.*

The chief contention of defendant is that the trial court erred in its interpretation of the will. Most of the matters relating to this issue, however, were considered by the District Court of Appeal on the prior appeal in *Sears* v. *Rule,* 45 Cal.App.2d 374 [114 P.2d 57], and, as plaintiffs urge, the sufficiency of the evidence must be considered in the light of that decision which constitutes the law of the case. (*Gore* v. *Bingaman,* 20 Cal.2d 118 [124 P.2d 17] ; see *Allen* v. *California Mutual B. & L. Assn.,* 22 Cal.2d 474, 481-482 [139 P.2d 321].)

The prior appeal was taken from a judgment given after the sustaining of a demurrer to the complaint and the refusal of the trial court to permit the filing of a second amended complaint which, with minor exceptions, was the pleading

subsequently used at the present trial. The chief question before the appellate court was whether or not the proposed pleading "states facts sufficient to create a resulting trust in the residue of property not disposed of by will, for the benefit of the heirs according to the rules of succession. . . ." (45 Cal.App.2d at p. 378.) The proposed complaint then, as it does now, set forth the provisions of the will of Sarah Weber and alleged, among other things, that the testatrix intended to give defendant the residue in trust only, that he had agreed with her to distribute the property in accordance with their previous understanding, and that a "secret trust" was thereby created. Neither plaintiffs nor cross-complainant have ever attempted to enforce the alleged agreement itself. They do not claim that they are third-party beneficiaries thereof nor do they seek to prove its terms. They merely urge the existence of the agreement or understanding as a part of their proof in establishing that there was an intestacy, and that defendant should be compelled to hold the property as an involuntary trustee for themselves as heirs.

The District Court of Appeal, after pointing out that the will did not create a *valid* trust because it did not mention the subject, purpose or beneficiary, went on to say (45 Cal. App.2d at p. 379): "After a careful examination of the provisions of the will, viewed in the light of the facts alleged in the complaint, we are of the opinion the probate court erred in determining that the residue of the estate, other than the household goods and personal effects, were devised absolutely to Charles T. Rule. On the contrary, we are persuaded the testatrix did not intend to make her brother sole beneficiary of her entire estate. It seems clear that she had a previous understanding with him that she would give him the property in trust to be distributed to individuals or for the benefit of charitable causes according to an agreement between them." (See, also, similar expressions at pages 382 and 383 of 45 Cal.App.2d.)

This construction was based in part upon the "surrounding circumstances" as to which considerable supporting evidence was offered at the trial. Other portions of the opinion, however, indicate that both the intention of the testatrix and the existence of an agreement between herself and defendant could be inferred from the language of the will alone. For example, at page 382 of 45 Cal.App.2d, the court points out that the will gave defendant, absolutely, all household goods

and personal effects, but that it treated the residue in a separate paragraph, whereas if it had been intended to make defendant sole beneficiary, the additional paragraph, together with its qualifying language, would have been unnecessary. Further, the court said at page 382 of 45 Cal.App.2d: ''In subdivision (b) of paragraph five of the will she uses language which is absolutely conflicting with the theory that she intended to make her brother Charles' sole beneficiary of her estate. In effect, she says I trust my brother Charles and am confident he 'will *distribute* my estate' according to our agreement and my wishes in that regard, as previously expressed in many discussions. That declaration is not a mere expression of a wish or desire. . . . It is significant that the will specifically declares the testatrix has confidence to believe her brother 'will distribute' her property . . . to the parties or causes previously agreed upon in former conferences. That is inconsistent with the theory that *he was* entitled to *distribution* of the entire estate as the sole beneficiary thereof. The theory that the testatrix did not intend to convey her entire estate to her brother Charles, and upon the contrary that she intended to convey the residue mentioned in the fifth paragraph to him in trust *to be distributed* in accordance with their previous agreement, seems to be conclusive from the sixth clause of the will. . . . Paragraph seven of the will contains a clause equally inconsistent with the theory that Charles T. Rule was to become sole beneficiary of the entire estate, . . . . It is apparent the last-mentioned clause contemplates *distribution* of a part of the estate to minors or an incompetent person. No language could more clearly indicate that Charles was not to become the sole beneficiary or distributee of the entire estate.''

There is other evidence in the record which, independently of the law of the case, tends to support the judgment. Although defendant declared on the stand that Mrs. Weber told him the property was all to be his, that he could do with it as he saw fit, and that he was not bound to transfer it to anyone else unless he wished to do so, his testimony was not consistent, and some of it was more in accord with the position urged by plaintiffs and cross-complainant. It appears that defendant wrote letters to his brother indicating that he had insisted upon his sister making a will, and he admitted discussing with her what was to be included in her will. The legal effect of the will was explained to Mrs. Weber in defendant's presence, he was familiar with its terms before

it was executed, and he knew exactly what it meant. He testified that the will was drawn for the purpose of carrying out her wishes and that he had discussed with her, "as stated here in the will," what those wishes were. When asked if Mrs. Weber told him how he should "divide" the property, he replied, "Yes," and made the same reply to the question whether his brothers "were to share in this estate or some part of it." And in a deposition taken in connection with another action he stated that after the will was signed an attorney explained "about the trust. . . . About everything going to [defendant] in trust." At the trial in the present action his only explanation was that this was a misconstruction of his meaning and that the words had been put in his mouth.

From the foregoing it appears that the record is sufficient to support the findings that Mrs. Weber did not intend to leave to defendant absolutely any of her property except the household furniture and other items mentioned in article four of the will, and that defendant knew that she intended to leave him the residue of the estate "in trust only, for the beneficiaries previously agreed upon and understood between herself and Charles T. Rule."

Under these facts a constructive trust arose when the property was distributed to defendant by the probate court. The general proposition is well settled that where a testator devises his property in reliance upon an agreement or understanding with the devisee that the latter will hold it in trust for, or convey it to, a third person, the devisee holds the property upon a constructive trust for the third person. (*Weinstein* v. *Moers,* 207 Cal. 534 [279 P. 444]; *Curdy* v. *Berton,* 79 Cal. 420 [21 P. 858, 12 Am.St.Rep. 157, 5 L.R.A. 189]; *De Laurencel* v. *DeBoom,* 48 Cal. 581; *Prior* v. *Andrews,* 83 Cal.App. 782 [257 P. 560]; see *Brazil* v. *Silva,* 181 Cal. 490, 496-497 [185 P. 174]; *Estate of Lyon,* 163 Cal. 803, 805 [127 P. 75]; *Estate of Everts,* 163 Cal. 449, 454 [125 P. 1059]; *cf. Aho* v. *Kusnert,* 12 Cal.2d 687 [87 P.2d 358].) The trust is imposed in order to avoid unjust enrichment of the devisee. (See Rest., Trusts, § 55, and comments thereto; Rest., Restitution, § 186, and comments thereto.) The issues raised in such a situation are not within the jurisdiction of the probate court, and the will and the decree of distribution remain effective to give legal title to the devisee or legatee named, but the constructive trust is enforced in a separate

proceeding in equity without attack on the probate proceedings. (*Weinstein* v. *Moers*, 207 Cal. 534, 541-542 [279 P. 444]; *In re Sharp*, 17 Cal.App. 634 [120 P. 1079]; *Prior* v. *Andrews*, 83 Cal.App. 782 [257 P. 560]; see *Estate of Rath*, 10 Cal.2d 399, 405-406 [75 P.2d 509, 115 A.L.R. 836] [stating that although there is an extrinsic agreement, distribution may be ordered only in accordance with the will]; *Estate of Everts*, 163 Cal. 449, 454 [125 P. 1059]; cf. *Brazil* v. *Silva*, 181 Cal. 490 [185 P. 174].)

The present case is different from those cited above in that here plaintiffs do not claim to be the beneficiaries of the agreement or understanding between defendant and the testatrix, and the trial court made no finding on the exact terms, purposes, and beneficiaries of the agreement. For this reason it is impossible to enforce a trust in favor of the undisclosed persons who were the intended beneficiaries of the agreement, and we are not at this time concerned with the rights of such persons should their identity become known. Since it was found, however, that an agreement did exist, and that the testatrix, to defendant's knowledge, did not intend that defendant should keep the property, defendant would be unjustly enriched if he were permitted to retain it and, therefore, a constructive trust arises for the benefit of the heirs of Mrs. Weber. The problem is similar to that presented where such an agreement or ''secret trust'' may not be carried into effect because its purpose is contrary to law, in which event, if no other disposition is made by the will, the devisee or legatee will be declared to hold the property in trust for the benefit of the heirs of the testator. (See *Garner* v. *Purcell*, 173 Cal. 495, 499 [160 P. 682]; *O'Donnell* v. *Murphy*, 17 Cal. App. 625, 629 [120 P. 1076]; Rest., Trusts, Comment i to § 55.)

In view of this conclusion we need not consider the sufficiency of the evidence to support the trial court's findings to the effect that the probate court should have distributed the property to the heirs and that the decree of distribution was procured through the extrinsic fraud of defendant and was consequently void. The judgment, as we have seen, may be sustained without setting aside the decree of distribution.

It is, of course, immaterial that the theory upon which the judgment may be affirmed is not identical with that relied upon by plaintiffs or by the trial court, since plaintiffs are required only to plead and prove facts sufficient to justify relief, and the trial court's judgment must be affirmed if the

findings, supported by the evidence, are sufficient to warrant the relief granted on any legal theory. (*Cf. MacIsaac* v. *Pozzo,* 26 Cal.2d 809 [161 P.2d 449].)

## II. *Validity of plaintiffs' claim as statutory heirs of Mrs. Weber.*

The next question relates to the claim of plaintiffs that they are entitled to one-half of the property as statutory heirs of Mrs. Weber by virtue of sections 228 and 229 of the Probate Code as these sections read at the time of Mrs. Weber's death in 1936. Section 228 then provided that if, as here, neither the decedent nor the predeceased spouse left children or descendants of children surviving, then one-half of the *community property* of decedent and the previously deceased spouse should go to certain heirs of the predeceased spouse and the other half to certain heirs of the decedent. Section 229 provided that if decedent left no issue, and the estate was *separate property* of the previously deceased spouse "and came to the decedent from such spouse by gift, descent, devise or bequest," all of such property goes to certain heirs of the predeceased spouse. Plaintiffs are the heirs of Mrs. Weber's predeceased husband. The trial court found that all the property of Mrs. Weber except the lot on which the home was located was community property of herself and Mr. Weber and that plaintiffs were entitled to one-half thereof. The court found, further, that title to the home, which had been purchased with funds of both Mr. and Mrs. Weber, had been acquired in the name of Mr. Weber but was subsequently transferred to Mrs. Weber and that this transfer constituted a gift of Mr. Weber's one-half interest. The court concluded that plaintiffs were entitled to a one-half interest in the home.

Defendant concedes that in the event of intestacy plaintiffs would be entitled to a one-half interest in the home. He contends, however, that the evidence is insufficient to support the finding that the remaining property was community property of Mr. and Mrs. Weber. He urges that it was conclusively shown that it was held by them as joint tenants and that, assuming intestacy, it vested in Mrs. Weber, the survivor, on her husband's death, and on her death passed to her blood heirs alone. His argument is that sections 228 and 229 of the Probate Code did not then apply to joint tenancies.

The record shows that certain items of property, including

stocks, bonds, other securities, real property, and bank accounts were held in the name of Mr. Weber alone. Other real property and two bank accounts stood in the name of Mr. and Mrs. Weber as joint tenants. The court found that this property was held in joint tenancy merely for the purpose of convenience and to save expense of probate and that Mr. and Mrs. Weber had agreed that, regardless of title, all their property should constitute community property. ■ It is of course well established that evidence is admissible to show that a husband and wife who took property apparently as joint tenants actually intended it to be community property and that property may be converted into community property by oral agreement. (*Tomaier* v. *Tomaier*, 23 Cal.2d 754, 757-758 [146 P.2d 905].)

■ The evidence offered by plaintiffs in this connection consists, first, of declarations of Mr. Weber in the presence of Mrs. Weber and not denied by her. Mr. Weber, during his lifetime, stated in the presence of Mrs. Weber that ''he had his property in joint tenancy to avoid probate costs.'' He also said ''you save probating costs, and it is the best and the cheapest in the end; and . . . that is the way I have all mine.'' Mrs. Weber did not reply. Mr. Weber told a witness that he had carried a bank account in joint tenancy to simplify the handling of their estates. Mr. Weber transacted all the business for both of them. Several witnesses testified that Mr. Weber always spoke of the various properties as *his*; that he said *he* had made purchases and sales; that he never spoke of any property or money that his wife had; and that Mrs. Weber, who heard these statements, never contradicted them.

Mrs. Weber also made numerous declarations regarding the various properties. She said she had never attended to any of the business. With reference to certain oil wells, subsequently sold, she said: ''Web had a sweet income from that.'' She observed that although the money in the bank was in a joint account, it was ''Web's money,'' that ''It isn't my money, it is all Web's,'' and that she couldn't do anything with it. She made similar statements with respect to certain stocks, street bonds, and real property. Defendants urge that these statements of Mrs. Weber were made immediately following Mr. Weber's death when she was in a distraught condition, but the effect of such circumstances on the weight of the evdience was a question for the trier of fact.

Additional declarations were made in the course of the

probate proceedings. The petition for letters of administration in the estate of Mr. Weber, in which Mrs. Weber, John Rule, and defendant joined, stated that decedent left an estate "consisting of community personal property," and the petition referred to checks payable to decedent, stocks, bonds, and other personal property. In the probate order settling the final account and distributing the property in the estate of Mr. Weber it was found that all the property in the estate, including all the securities and certain other personal property of Mr. and Mrs. Weber, and four parcels of real property, was community property. It is true that this did not include eight parcels of real property and the two bank accounts held under the names of both Mr. and Mrs. Weber as joint tenants and separately listed in the inheritance tax appraiser's report. But at the inheritance tax hearing after the death of Mr. Weber, Mrs. Weber testified that there was no "joint personal property that stood in joint tenancy" that she knew of, other than the two bank accounts mentioned heretofore. She also testified that she still had the money that she had at the time she married Mr. Weber. The transcript of the tax hearing also shows the following: "By MR. PECK [attorney for the inheritance tax department]: Apparently she had some and he had some. That has been commingled probably in the same way. How would it be to just call it community property? By X: That is what we are trying to do." (The letter "X" was used when the reporter did not know who made the statement.) Plaintiffs assert that the context shows that Mrs. Weber gave the answer here, but in any event it is clear that she made no objection to this procedure.

It is apparent from the foregoing that the trial court was warranted in concluding that all of the property of Mr. and Mrs. Weber involved herein was community property, despite the use of the joint tenancy form in some of their holdings.

III.  *Effect of the instruments transferring to Mrs. Weber all of plaintiffs' interest in the estate of Mr. Weber.*

Defendant next contends that Mrs. Weber, after the death of her husband, for a valuable consideration, acquired from plaintiffs by quitclaim all their interest in the estate of Mr. Weber, that by the transfer plaintiffs released any interest they had or thereafter acquired in Mr. Weber's estate, and that the property thereby became Mrs. Weber's own property. The trial court sustained a demurrer to this de-

fense and refused to permit the filing of a proposed amended answer setting forth two instruments, similar in terms, signed by Mrs. Weber and by plaintiffs and entitled "Agreement of Settlement with Heirs of Estate." The instruments both recited that grounds for contest of the will of Mr. Weber existed and that the agreements were executed "for the purpose of forever settling and determining the dispute concerning said will, and to prevent the contest thereof, and to forever settle and determine any and all interest of any character or nature whatsoever that [plaintiffs] may now or hereafter have in the estate of Charles F. Weber, deceased." It was provided that plaintiffs "hereby . . . forever rescind, remise, release, relinquish and quitclaim any and all claims, interests, rights, bequests and/or devises that [plaintiffs] may now, or hereafter, have, or acquire, in and to the estate of Charles F. Weber, deceased." It was also agreed that plaintiffs would file no "other or further petition or action against said estate or in any other way hinder or embarrass [Mrs. Weber] in the administration of said estate." The agreements were to bind the heirs of the parties thereto. The record shows, further, that by the settlement plaintiffs received a total consideration of $25,500. During the trial defendant offered these instruments in evidence, but they were rejected upon plaintiffs' objection that they related to the estate of Mrs. Weber's predeceased husband and not to the estate of Mrs. Weber.

It is defendant's contention that the instruments constituted a complete release by plaintiffs of any possible interest that they then had or thereafter acquired in the estate of Mrs. Weber and that plaintiffs are now barred from maintaining this action since their claim is based upon the fact that the property involved was a part of the estate of Mr. Weber within the meaning of sections 228 and 229 of the Probate Code. He also argues that since Mrs. Weber acquired plaintiffs' interest by *purchase,* the continuity of title essential under sections 228 and 229 was broken and she thereafter held the property freed of any possible right of succession by plaintiffs upon her death.

We find nothing in these instruments that would constitute a bar to this action. Their purpose was to settle a dispute over the estate of Mr. Weber and to prevent a will contest therein, and they disclose a typical case whereby the contestants relinquish their claims in the particular estate in return for a sum of money. The instruments refer repeatedly to plaintiffs' interest in the estate of Mr. Weber but make no

mention whatsoever of plaintiffs' rights in the property of Mrs. Weber after her death. It would be unreasonable to hold that by these instruments plaintiffs purported to surrender not only their claims to the estate of Mr. Weber, but in addition, and by implication alone, their rights to succession in the estate of another person who was still alive at the time.

Nor did the instruments make Mrs. Weber a purchaser of the property formerly held by her husband. Rather, they constituted a settlement or compromise of a rival claim against the estate of Mr. Weber which permitted the property to go to Mrs. Weber in the same manner it would have gone if neither the threatened contest nor the settlement had ever existed.

In support of his position defendant cites *Estate of Wilson*, 40 Cal.App.2d 229 [104 P.2d 716]. Plaintiffs contend that this case is not applicable and that it is "bad law and contrary to natural justice." In our opinion the decision is not inconsistent with the conclusion we have reached. It was there held that the *only purpose* of a "quitclaim deed and assignment" given by the heir of a deceased spouse to the surviving spouse was to surrender any rights which the heir might have upon the death of the surviving spouse under subdivision 8 of section 1386 of the Civil Code (the predecessor of Prob. Code, § 228). Whether or not the District Court of Appeal correctly determined the purpose of that document, its conclusion with respect thereto clearly constituted the underlying basis of the decision. In the present case, however, the instruments expressly stated that a different purpose was intended, namely, to accomplish the settlement of a threatened will contest. The possibility of settling a will contest or other dispute over the property of the deceased spouse was not considered in the Wilson case. Accordingly, we need not determine whether it was correctly decided upon the facts before the court.

### IV. *Contention that cross-complainant is barred by the statute of limitations.*

The cross-complaint of Mrs. Cotton was filed in March, 1942, approximately six years after the death of Mrs. Weber, and defendant contends that the claim of cross-complainant is barred by the statute of limitations. Mrs. Cotton, however, urges that the delay in filing her cross-complaint resulted from her ignorance of her rights because of certain false representations made to her by defendant and because

of his failure, as executor, to inform her of the true facts, and she asserts that defendant is estopped thereby from relying upon the statute of limitations. It appears that defendant, in his petition for probate of the will of Mrs. Weber, intentionally omitted the name of Mrs. Cotton and did not notify her of the proceedings although he was aware of her status as an heir and knew where she lived. Mrs. Cotton, however, learned of the death of Mrs. Weber and shortly thereafter came to Los Angeles from Nebraska and stayed at defendant's home as his guest for ten or twelve days. Defendant told her that she was not an heir of the decedent. He gave her no information about the contents of the will nor did he show her a copy. He did not disclose to her the nature and extent of the estate, but falsely represented that it was of little value. Defendant also represented that under the will he had complete power to determine the distribution of the estate; that none of Mrs. Weber's relatives was entitled to anything except as he chose to carry out his sister's wishes; that Mrs. Weber's estate was his to do with as he pleased but that he would give her either a ranch or $5,000 in cash; and that he was giving each of the other heirs $5,000. As the result of these conversations defendant and Mrs. Cotton executed a settlement agreement for the express purpose of avoiding litigation concerning the will, and under the terms of the settlement she received $5,000. Defendant also gave her a diamond ring. Immediately thereafter she went home.

In December, 1938, she was named as a defendant in plaintiffs' action and was served with a copy of the complaint and summons in Nebraska, following which she came to California and saw plaintiffs' attorney. She testified that she thought she had been summoned as a witness and asked for her fees and mileage, but the attorney told her that the action had been dismissed by the lower court and that an appeal was pending. She took no steps to enforce her rights until after she learned of the reversal of the first judgment in August, 1941. In December, 1941, or January, 1942, she received a letter from Mrs. John Rule which indicated that her husband had received certain buildings from the estate instead of the $5,000 settlement which defendant had represented was the amount given to each heir, and expressed fear that he might lose the property as a result of the litigation. Mrs. Cotton then became concerned over her own interest, engaged counsel to represent her, and filed her cross-complaint in March, 1942.

It should be added that cross-complainant was over 65 years of age at the time of the controversy, had only a ninth-grade education, had no business experience or knowledge of legal proceedings, and the court found that she did not understand any of the legal documents served on her or shown to her.

Thus it appears that the defendant first sought to exclude Mrs. Cotton entirely from the estate by failing to notify her of the probate proceedings; that he then, by his false representations and concealment of materials facts, induced her to accept a settlement of any claim she might have against the estate for a small sum; that she was falsely informed that this was the share accepted by other heirs; and that she was further led to believe not only that she had no enforceable legal right to any other or greater share but also that the estate was so depleted that it would not yield any substantial sum to anyone disputing the settlement. That cross-complainant was both ignorant and gullible is a necessary inference from her own testimony, but there is nothing inherently unbelievable in her story and, therefore, the judgment of the trial court in her favor forecloses further inquiry into its credibility.

It is apparent from the foregoing evidence that defendant should not be permitted to rely upon the statute of limitations. Where an action is based ''on the ground of fraud'' and therefore within the three-year statute of limitations, the cause of action is not deemed to have accrued until the discovery of the facts constituting the fraud. (Code Civ. Proc., § 338, subd. 4.) When the right of action is not based upon fraud, the exception provided in subdivision 4 of section 338 is not available to the plaintiff. Nevertheless, if the defendant, after committing the wrongful act, has fraudulently concealed the facts from the plaintiff, who by reason of such concealment did not discover that he had a right of action until too late to sue, the defendant will be estopped from taking advantage of his own wrong by asserting the statute of limitations. (*Pashley* v. *Pacific Elec. Ry. Co.*, 25 Cal.2d 226, 231 [153 P.2d 325].) In such a case, in determining when the plaintiff discovered, or should have discovered, the facts giving rise to his cause of action, the same rules govern that are applicable in cases falling within subdivision 4 of section 338 of the Code of Civil Procedure. (*Kimball* v. *Pacific Gas & Elec. Co.*, 220 Cal. 203, 215 [30 P.2d 39].)

148

The record shows that defendant's conduct amounted to fraudulent concealment of the facts within the meaning of the Pashley and Kimball cases; that Mrs. Cotton did not discover the true facts until sometime in 1942; and that the delay in asserting her rights was caused by the fraud of defendant. He not only made false representations to cross-complainant, tending to lull her into a sense of security, but it also appears that he was a fiduciary and, accordingly, had a duty to disclose the true facts to her. He was the personal representative of the decedent under the will and, further, he was a trustee holding title to the property devised and bequeathed to him under the will for the benefit of the heirs, including cross-complainant. His failure to speak the truth, therefore, amounted to a fraudulent concealment.

V. *Propriety of the money judgments against defendant.*

Defendant finally attacks the money judgments awarded against him upon the grounds that the court included therein certain sums based upon issues not raised by the pleadings and that the court did not follow a procedure appropriate to taking an accounting. ▉ With respect to the first point, defendant contends that although the complaint and cross-complaint requested an accounting only of the property embraced in the final decree of distribution in the estate of Mrs. Weber, the findings charge defendant with misappropriation of large sums of money belonging to Mrs. Weber that were not accounted for in her estate. He urges that these findings had no reference to the property listed in the decree of distribution in the estate or to rents, issues, and profits thereof; that evidence on these matters was introduced over his objection; and that the trial court acted in excess of its jurisdiction insofar as it based the money judgments thereon.

There is no merit in this contention. The action concerns all the property received by defendant under the residuary clause of Mrs. Weber's will, and its scope is sufficiently broad to include property that should have been accounted for in her estate as well as that which was specifically mentioned in the decree of distribution. It does not appear that defendant was misled by the fact that plaintiffs asked only for an accounting of the property passing to him under the decree of distribution, and, further, he could have, but apparently did not, ask for a continuance of the trial in order to meet any unanticipated problems.

▉ The action of the trial court, moreover, is in accord

with the general rule that a court of equity, having once acquired jurisdiction, will adjust all the differences between the parties arising from the cause of action in order to do complete justice and prevent further litigation, whether or not the particular relief was requested. (See *Smith* v. *Blodget,* 187 Cal. 235, 242 [201 P. 584]; *Vierra* v. *Fontes,* 135 Cal. 126, 129 [66 P. 241]; *Murphy* v. *Sheftel,* 121 Cal.App. 533, 541 [9 P.2d 568].) It has been held that under this rule the court could properly order an accounting although the complaint did not ask for such relief. (*Swan* v. *Talbot,* 152 Cal. 142 [94 P. 238, 17 L.R.A.N.S. 1066]; see 1 Am.Jur. 306.)

Defendant's objections to the procedure of the trial court are equally without foundation. He urges that no accounting at all was taken but that the trial court erroneously left the entire matter to findings prepared by counsel, thus not permitting charges and credits to be considered and exceptions taken to specific items. In *Whann* v. *Doell,* 192 Cal. 680, 684 [221 P. 899], cited by defendant, the court said that an action for an account would not be properly disposed of by a mere statement of the balance due, without a reference, without an account, or without exceptions being taken to specific items, because in such event the aggrieved party could not successfully present his grievances to an appellate court. The court added, however: "On the other hand, the contention that an account must be stated in accepted bookkeeping fashion cannot be maintained. . . . Any procedure or record from which it can be intelligently ascertained what the issues were as to the controverted items and how these issues were disposed of by the trial court will suffice for the purpose, whether the matter appears from the findings, the decree or a bill of exceptions, showing the controversy, and the disposition thereof. . . ."

In the present case the trial court received evidence showing in great detail all the items of property coming to defendant from Mrs. Weber and what defendant thereafter did with it. The court then ordered counsel on both sides to prepare findings that they thought appropriate, stating that the court would make its findings from those submitted by counsel. The findings thereafter adopted by the court listed, item by item, the properties received by defendant. After the judgment was rendered and upon motion for new trial the findings were amended and the money judgments were reduced from a total of $137,525.53 to a total of $93,206.26. The amended findings related not only to the charges against

defendant but also included credits allowed him for various expenditures made by him for benefit of the property. This procedure was not prejudicial to defendant. All the items involved appear in the record and are subject to examination upon appeal as required by the Whann case. Defendant had ample opportunity to propose favorable findings and to object to those prepared by plaintiffs. He had the further opportunity, which he apparently availed himself of, to suggest corrections in the findings on motion for new trial.

The appeal from the order denying a new trial is dismissed. The judgment is affirmed.

Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied November 29, 1945.