Filed 6/11/21  Thomas v. Griffin-Gress CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| TOMMY THOMAS et al.,<br><br>     Plaintiffs and Appellants,<br><br>v.<br><br>DIANE M. GRIFFIN-GRESS et al.,<br><br>     Defendants and Respondents. | H046738<br>(Monterey County<br>Super. Ct. No. 17CV004231) |

Plaintiffs Tommy and Daryl Thomas (the Thomases) challenge the trial court's dismissal of their action against respondents, the widow and children of their stepfather, Cyril Gress.  In 1998, the Thomases' mother, Elisabeth Gress, and Cyril created a revocable trust that would have left the couple's property to the Thomases.  Elisabeth died in 2008, and Cyril remarried.  In 2014, Cyril amended the trust as permitted by its terms so that all of the property would go to his children and his new wife.  After Cyril died, his son, respondent Robert Griffin-Gress, the trustee of the 2014 amended trust, sent a notice to the Thomases under Probate Code section 16061.7[1] along with a copy of the terms of the 2014 amended trust.  The Thomases requested a copy of the original 1998 trust, which they received three months later.

More than 120 days after the notice but less than 60 days after the Thomases received a complete copy of the original 1998 trust, the Thomases filed an action against Robert, his siblings, and Cyril's widow.  They alleged that the provisions of the

---

[1] All further statutory references are to the Probate Code.

2014 amended trust conflicted with Cyril's promise to Elisabeth that the property would go to the Thomases. The trial court sustained a demurrer without leave to amend as to all of the causes of action against Robert, except for the fraud cause of action, on statute of limitations grounds because the action was not brought within the statutory 120-day period set forth in section 16061.8. The court granted judgment on the pleadings as to the fraud cause of action against Robert because it failed to allege any misrepresentations by Robert. The court also sustained a demurrer without leave to amend as to all of the causes of action against Robert's siblings and Cyril's widow on the same grounds, and it entered judgments of dismissal as to Robert, Robert's siblings, and Cyril's widow.

On appeal, the Thomases contend that section 16061.8's 120-day statute of limitations does not apply because their action was not "an action to contest the trust." (§ 16061.8.) Alternatively, they contend that, under section 16061.8, their action was timely because it was brought within 60 days after they received a copy of the original 1998 trust. We reject their contentions and affirm the judgments.

## I.     BACKGROUND

In August 1998, Elisabeth and Cyril created a trust. The trust identified the Thomases, Elisabeth's sons by a prior marriage, as the successor trustees. The 1998 trust provided that it could be "revoked, in whole or in part" or amended "[w]hile either Settlor is living" by a written instrument delivered to the trustee. The trust expressly provided that it would continue to be revocable after the death of either settlor. The surviving settlor was also granted the power to appoint the trust assets by will to anyone. If that did not happen, the assets were to be distributed as set forth in the trust, which provided that the Thomases would receive those assets if they were living.[2] Elisabeth's August 1998 will expressly stated that it was intended to dispose of only such assets as were not held

---

[2] The 1998 trust also provided that any beneficiary or heir who challenged the trust would be disinherited and would forfeit any interest under the trust.

by the trust.  She left those assets to Cyril in trust under the 1998 trust.  Elisabeth died in 2008.

In October 2014, after Cyril had remarried, he executed an amended trust declaration.  The 2014 amended trust struck all of the provisions of the 1998 trust and substituted new provisions expressly disinheriting the Thomases, leaving the trust assets to Cyril's new wife and his children, and identifying his son Robert as the successor trustee.[3]

After Cyril's death, Robert sent a notification to the Thomases under section 16061.7.  This notification, which was served on the Thomases on June 14, 2017 and was accompanied by a copy of the 2014 amended trust, identified Robert as the trustee of the 2014 amended trust and informed the Thomases that they were "entitled to receive from the trustee a true and complete copy of the terms of the trust by requesting the same" from the trustee.  It also stated, as required by section 16061.7:  "YOU MAY NOT BRING AN ACTION TO CONTEST THE TRUST MORE THAN 120 DAYS FROM THE DATE THIS NOTIFICATION BY THE TRUSTEE IS SERVED UPON YOU OR 60 DAYS FROM THE DATE OF WHICH A COPY OF THE TERMS OF THE TRUST IS MAILED OR PERSONALLY DELIVERED TO YOU IN RESPONSE TO YOUR REQUEST DURING THE 120 DAY PERIOD, WHICHEVER IS LATER." A form letter that could be used to request a copy of the terms of the trust was attached to the notification.

The Thomases filed their original petition and complaint against Robert, individually and as trustee, his siblings, and Cyril's widow on November 17, 2017.[4]

_____

[3] The 2014 amended trust contained a "No-Contest Clause" under which any "beneficiary" contesting the trust without probable cause would receive nothing.

[4] The attorney who had drafted the two trusts was also named as a defendant, and a cause of action for professional negligence was alleged against him.  The record contains no indication that he filed a demurrer, and he is not a party to this appeal.

They alleged that when Elisabeth and Cyril created the 1998 trust, they agreed that the Thomases would receive the trust property after both of them died. After Elisabeth died, Cyril revoked the trust and created a new trust under which the trust property would instead go his new wife and his children. The original petition and complaint pleaded, among other things, causes of action for breach of contract, fraud, interference, and declaratory relief.

The Thomases filed a second amended petition and complaint in February 2018. The petition portion of this pleading alleged a cause of action seeking a determination that the trust amendment was invalid. The complaint portion alleged causes of action for breach of contract, fraud, promissory estoppel, conversion, interference, and declaratory relief. The Thomases alleged that the June 2017 notification was defective and that it had erroneously included only the 2014 amended trust but not the 1998 original trust. They asserted that they were unable to "assess their rights" without a copy of the 1998 trust. The Thomases alleged that they requested a copy of the 1998 trust from Robert, but they did not receive a complete copy of the 1998 trust until September 26, 2017. They alleged that, due to this delay, they had until November 25, 2017 to timely file their action.

Robert filed a demurrer to the second amended petition and complaint. He asserted that the Thomases' action was barred by the statute of limitations set forth in sections 16061.7 and 16061.8 because the action had not been filed within the 120-day limitations period. The Thomases responded by claiming that their action was timely because it had been filed within 60 days after they received a copy of the 1998 trust and that section 16061.8 did not apply because their action was not a trust contest but "a challenge to whether certain assets [we]re included" in the 2014 amended trust. They claimed that their action was based on an allegation that Cyril had "manipulated" assets. The trial court sustained the demurrer on statute of limitations grounds without leave to amend as to two causes of action and with leave to amend as to seven causes of action, and it overruled the demurrer as to the fraud cause of action.

4

The Thomases filed a third amended petition and complaint. They alleged that they had relied on the statement in the notice that they would have 60 days after receiving the terms of the trust to file their action. The third amended petition and complaint alleged causes of action for conversion, breach of contract, fraud, promissory estoppel, interference, breach of fiduciary duty, and declaratory relief. Two of these causes of action were asserted for the first time in this pleading.[5] Robert again demurred.

In November 2018, the court sustained Robert's demurrer without leave to amend as to all causes of action except for the fraud cause of action. Robert then sought judgment on the pleadings on the ground that the fraud allegations did not allege that he had made any misrepresentations. The Thomases sought reconsideration of the court's order sustaining the demurrer. The trial court denied reconsideration, granted the motion for judgment on the pleadings, and entered a judgment of dismissal as to Robert. Robert's siblings and Cyril's widow also demurred. Their demurrer was sustained without leave to amend, and the court entered a judgment of dismissal as to them. The Thomases timely filed a notice of appeal challenging both judgments.

## II. DISCUSSION

### A. *Standard of Review*

" 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by

---

[5] In May 2018, the Thomases filed creditor's claims against Cyril's estate based on the original 1998 trust. The creditor's claims and Cyril's estate are not at issue in this appeal.

amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) A motion for judgment on the pleadings is subject to the same standard of review. (*Ellerbee v. County of Los Angeles* (2010) 187 Cal.App.4th 1206, 1213-1214.)

### B. Sections 16061.8 and 16060.5

"No person upon whom the notification by the trustee is served pursuant to this chapter, whether the notice is served on him or her within or after the time period set forth in subdivision (f) of Section 16061.7, may bring *an action to contest the trust* more than 120 days from the date the notification by the trustee is served upon him or her, or 60 days from the date on which *a copy of the terms of the trust* is delivered pursuant to Section 1215 to him or her during that 120-day period, whichever is later." (§ 16061.8, italics added.)

"As used in this article, 'terms of the trust' means the written trust instrument of an irrevocable trust or those provisions of a written trust instrument in effect at the settlor's death that describe or affect that portion of a trust that has become irrevocable at the death of the settlor. In addition, 'terms of the trust' includes, but is not limited to, signatures, amendments, disclaimers, and any directions or instructions to the trustee that affect the disposition of the trust. 'Terms of the trust' does not include documents which were intended to affect disposition only while the trust was revocable. If a trust has been completely restated, 'terms of the trust' does not include trust instruments or amendments which are superseded by the last restatement before the settlor's death, but it does include amendments executed after the restatement. 'Terms of the trust' also includes any document irrevocably exercising a power of appointment over the trust or over any portion of the trust which has become irrevocable." (§ 16060.5.)

6

## C.       The Thomases' Action Was an Action to Contest the Trust

The Thomases contend that their action was not subject to section 16061.8's limitations period because their action was not an "action to contest the trust" but an action "to enforce a promise by a decedent."

The Thomases fail to garner any legal support for their claim that their allegations did not contest the trust. Instead, they expend considerable effort arguing the merits of their causes of action, which are not at issue in this appeal. The only question is whether their causes of action were untimely under section 16061.8.

The Thomases cite a number of inapposite cases. The issue in *Estate of Mullins* (1988) 206 Cal.App.3d 924 was whether the probate court *had jurisdiction* over an action to enforce an oral agreement to make a testamentary disposition or whether such an action should have been brought as a civil action. (*Id.* at pp. 927-928.) The holding was that the probate court lacked jurisdiction over that action because the action did not concern the internal affairs of the trust. (*Id.* at p. 931.) This case does not involve the scope of a probate court's jurisdiction.

*Cooney v. Glynn* (1910) 157 Cal. 583 was a civil action to enforce a promise to hold property in trust. The court, which reversed a nonsuit, did not consider whether the action was one contesting a trust, and the statute of limitations was not at issue. (*Id.* at pp. 587-590.) *Aho v. Kusnert* (1939) 12 Cal.2d 687 did not involve a trust at all. *Yeh v. Tai* (2017) 18 Cal.App.5th 953 was an action under a Family Code provision that contained its own special statute of limitations for breach of fiduciary duty. (*Id.* at p. 957.) That provision is not at issue in this case.

The Thomases claim that *Day v. Greene* (1963) 59 Cal.2d 404 (*Day*) is "on all fours" with this case. It is not. The statute of limitations issue in *Day* did not concern section 16061.8, which was not enacted until decades after the *Day* decision. In *Day*, the court held that the action to impose a constructive trust on part of the plaintiff's stepmother's estate was subject to the limitations period for fraud rather than the

7

limitations period for breach of contract. (*Day*, *supra*, at p. 411.) The case did not involve an express trust, and the *Day* court said nothing about what would constitute an action contesting a trust. (*Id*. at pp. 408-409.)

*Redke v. Silvertrust* (1971) 6 Cal.3d 94 is also not on point as it did not concern any statute of limitations or whether an action was an action contesting a trust. Although *Ludwicki v. Guerin* (1961) 57 Cal.2d 127 concerned a statute of limitations, it was not the limitations period at issue here, and the court said nothing about what would constitute an action contesting a trust.

The Thomases' reliance on cases interpreting no-contest clauses is misplaced, as that is another issue that is not before us in this case.[6] *Giammarrusco v. Simon* (2009) 171 Cal.App.4th 1586 concerned a petition for declaratory relief seeking a finding that it would not be a contest under a trust's no-contest clause to make a contention that an acknowledged instrument satisfied ambiguous language in the trust. (*Id.* at p. 1593.) The issue turned on whether that specific contention fell within the particular language of the trust's no-contest clause. (*Id.* at p. 1601.) *Estate of Watson* (1986) 177 Cal.App.3d 569 similarly concerned whether an action to enforce an oral promise came within a no-contest clause in a will, and the court recognized that such an issue had to be resolved on a "case-by-case" basis and depended on the particular language of the no-contest clause. (*Id.* at p. 572; see also *Burch v. George* (1994) 7 Cal.4th 246, 261 [rejecting claim that "any proceeding based upon a claim of right independent of a will or trust instrument is never a contest for purposes of the no contest law"].) *Estate of Miller*

---

[6] Although "contest" is defined in section 21310 for purposes of a part of the Probate Code concerning "no contest clause[s]," that definition does not apply to section 16061.8. Section 21310 defines a "contest" "[a]s used in this part," which is Part 3 of Division 7 of the Probate Code. Section 16061.8 appears in Part 4 of Division 9 of the Probate Code.

(1963) 212 Cal.App.2d 284 also concerned a no-contest clause and did not concern a statute of limitations.

The Thomases insist that an action "to enforce a settlor's promise to bestow particular property upon someone does not amount to a trust contest even though the settlor put that asset into the trust before dying." They cite no support for this proposition. They simply claim that what matters is that the "primary right" upon which they based their action was Cyril's breach of promise, which they contend was not linked to the trust. However, the underlying basis for all of the Thomases' causes of action, despite multiple opportunities to amend them, was their allegation that Cyril's execution of the 2014 amended trust **was** *the breach of promise*. We reject the Thomases' claim that their causes of action did not contest the trust. Consequently, section 16061.8's 120-day limitations period applied to all of the Thomases' causes of action against Robert, his siblings, and Cyril's widow.

### D. *The Thomases' Action was Untimely*

The Thomases argue that their action was timely under section 16061.8 because they filed it within 60 days after they received a complete copy of the terms of the *1998 trust*.

Section 16060.5 defines " 'terms of the trust' " for purposes of section 16061.8, and it provides that "[i]f a trust has been completely restated, 'terms of the trust' *does not include* trust instruments or amendments *which are superseded by the last restatement before the settlor's death . . . .*" (§ 16060.5, italics added.)

Although the 1998 trust was superseded by the 2014 amended trust, which was the last restatement before Cyril's death, the Thomases contend that "the settlor's death" in section 16060.5 does not refer to *Cyril's* death but to *Elisabeth's* death and therefore section 16061.8 required the trustee to provide them with a copy of *the 1998 trust*, which

9

was the trust in effect at the time of Elisabeth's death.[7] They cite nothing to support this contention but argue that they could not evaluate the validity of the 2014 amended trust without reviewing the 1998 trust.

The Thomases' argument is inconsistent with the express language of section 16060.5, which identifies the "terms of the trust" as used in section 16061.8 as the terms that became "irrevocable at the death of the settlor." No terms of the 1998 trust became irrevocable at the time of Elisabeth's death, as the 1998 trust provided that Cyril could revoke or amend that trust after Elisabeth's death. The only trust terms that became irrevocable at anyone's death were the terms of the 2014 amended trust, which became irrevocable at the time of Cyril's death. Hence, the "terms of the trust" under section 16061.8 were the terms of the 2014 amended trust. As the 2014 amended trust was sent to the Thomases with the notice, the 60-day period had no application here.

The Thomases' fallback argument is that equitable estoppel applies. They assert that what they received in June 2017 was "a cover letter indicating an enclosure was the 1998 trust document (which was not enclosed), a Notification which specifically identified the 1998 trust document and offered to provide a copy of the trust documents upon request (3CT p. 355) and a 2014 trust document (3CT p. 285-86)." They claim that "the reference to enclosure of the 1998 document, which was not enclosed, would have signaled that one could ask that the missing document be provided."

Page 355 of the clerk's transcript is the notice itself, signed by Robert, which stated that Cyril "executed THE GRESS FAMILY TRUST, in his capacity as settlor and trustee on August 10, 1998, and restated in its entirety on October 24, 2014." The notice did not offer to provide a copy of the 1998 trust. Instead, it stated: "If you would like a copy of the terms of THE GRESS FAMILY TRUST, *as amended and restated*, kindly

---

[7] They also suggest without argument that the 2014 amended trust might have been "invalid for some reason." We disregard this unsupported suggestion.

10

mail the request form attached hereto . . . ." (Italics added.) The attached request form stated: "I respectfully request a true and complete copy of the terms of THE GRESS FAMILY TRUST, *as amended and restated*, as defined in Probate Code §16060.5 be mailed to me . . . ." (Italics added.) Thus, neither the notice nor the request form offered to make the 1998 trust available to the Thomases.

The Thomases' only remaining allegations on this point were that the notice and request form were accompanied by a "cover letter" (which was not attached to their pleadings) that inaccurately reflected that the 1998 trust was enclosed, thereby causing them to believe that they were entitled to a copy of the 1998 trust before the 60-day period would commence. Pages 285 and 286 of the clerk's transcript are two pages of the Thomases' third amended petition and complaint. On those pages, the Thomases alleged that they "received a letter *from defendant Gregory M. Chilton*" that accompanied the notice and the 2014 amended trust and that this letter inaccurately "indicated it enclosed the 1998 Trust." (Italics added.) The Thomases alleged that they submitted a request, but it took over three months for them to acquire a complete copy of the 1998 trust.

" ' "[A] party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period. [Equitable estoppel] is wholly independent of the limitations period itself and takes its life . . . from the equitable principle that no man [may] profit from his own wrongdoing in a court of justice." ' " (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 383.) "The basic principles of equitable estoppel are well established and easily stated. 'Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it.' [Citation.] ' "Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the

11

party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." ' " (*Honeywell v. Workers' Comp. Appeals Bd.* (2005) 35 Cal.4th 24, 37.)

The Thomases' allegations in their third amended petition and complaint were wholly insufficient to support estopping Robert, his siblings, or Cyril's widow from asserting the statute of limitations. The key element was missing. The Thomases did not allege any conduct by Robert, his siblings, or Cyril's widow or allege that any of them "intend[ed] that [their] conduct shall be acted upon" or "so act[ed] that the party asserting the estoppel had a right to believe [that conduct] was so intended." The only conduct the Thomases alleged as a basis for an estoppel was *the conduct of Chilton*, not the conduct of Robert, his siblings, or Cyril's widow.[8] The Thomases did not allege that Robert, his siblings, or Cyril's widow intended for Chilton's conduct to influence the Thomases' actions in connection with the limitations period. Since the Thomases did not allege a basis for an estoppel, the statute of limitations barred their action against Robert, his siblings, and Cyril's widow.

## III. DISPOSITION

The judgments are affirmed.

---

[8] Chilton was the attorney who represented both Cyril and Elisabeth and drafted both the 1998 trust and the 2014 amended trust.

12

_____

ELIA, ACTING P.J.

WE CONCUR:


_____

BAMATTRE-MANOUKIAN, J.


_____

DANNER, J.



*Thomas et al. v. Griffin-Gress et al.*
H046738